**In re Bill Ray SELMAN, SS# 525–65–2862 a/k/a Bill Selman, Bill R. Selman, William Selman, William R. Selman; and Mary Lisama Selman, SS# 525–82–7592, a/k/a Mary Selman, Mary L. Selman, Debtors.**

**Bankruptcy No. 13–90–00286 M F.**

United States Bankruptcy Court,
D. New Mexico.

Oct. 26, 1990.

Carol M.G. Clark, Albuquerque, N.M., for debtors.

Jack L. Fortner, Farmington, N.M., for Associates Financial Services Co. of N.M., Inc.

### MEMORANDUM OPINION

MARK B. McFEELEY, Chief Judge.

This matter came before the Court to consider confirmation of the debtors' chapter 13 plan. Associates Financial Services Company of New Mexico, Inc. ("Associ-

ates") objected to confirmation of the plan. The parties submitted briefs on the issue of whether the debtors can modify Associates' claim. The dispute centers on whether the prohibition on modification found in 11 U.S.C. § 1322(b)(2) is applicable. Having considered the briefs, case law, exhibits, and being otherwise fully informed and advised, the Court finds that the debtors may modify Associates' claim.

## FACTS

On August 31, 1988, the debtors borrowed $74,500 at 17.5% interest per annum from Associates and executed a note to Associates for that amount. To secure the note, the debtors gave Associates a mortgage on a house and approximately 7.2 acres in San Juan County, New Mexico. The debtors bought a credit life insurance policy and a hazard insurance policy on the property. Both policies name Associates as payee/beneficiary.

The debtors defaulted on payments on the note, and a foreclosure judgment was entered against them on December 22, 1989. The debtors filed a chapter 7 petition on February 1, 1990. The debtors converted to chapter 13 on March 28, 1990, and filed their chapter 13 plan on May 29, 1990. The section on payment of claims in the proposed plan states:

3. ... Debtors believe there is only one (1) class 3 creditor, Associates ... Debtors also believe that there are two (2) separate parcels of real estate on which Associates holds one mortgage, known as the 1.2 acres and house, and the adjoining six (6) acre tract. As to the 1.2 acres/house (the Debtor's homestead), the Debtors hereby value that property at $20,000.00, and propose to pay Associates, ... $20,000.00 plus 10% simple interest under the Plan in full satisfaction of Associates' interest in said homestead

property. The Debtors intend to pay this claim under the Plan, first through the remaining monthly payments due under the Plan, with a balloon on the balance of the claim at the end of the term of the Plan, at which time the Debtors will refinance to pay off the claim of Associates on the homestead property in full. Associates shall retain its lien on the subject 1.2 acres/homestead property for the duration of this Plan, or until paid in full.

As to the remaining real property mortgaged to Associates, consisting of approximately six (6) acres, the Debtors intend to abandon/surrender that real estate to Associates, and any deficiency resulting from the sale of that property will be treated as a Class 5 unsecured claim.

Associates argues that the parcel of the land with the residence has a fair market value of $32,000 and thus the secured claim on that parcel would be $32,000. Associates' Exh. B. Therefore, the debtors seek to modify Associates' claim in two ways: (1) by separating the property into two parcels, and (2) by bifurcating Associates' claim into secured and unsecured portions and valuing the secured portion at $20,000. Associates objects on the grounds that the debtors cannot modify its claim at all and that even if modification of the claim were allowed, the debtors are undervaluing the portion of the land which includes their residence, thereby decreasing the secured portion of its claim.

## DISCUSSION

The issues in this case are two. The threshold question is whether § 1322(b)(2) applies to prohibit the modification of Associates' claim. If it does, the debtors alternatively argue that 11 U.S.C. § 506(a) can operate to modify Associates' claim by reducing the secured portion.[1]

---

1. 11 U.S.C. § 506(a) provides:

An allowed claim of a creditor secured by a lien on property in which the estate has an interest, or that is subject to setoff under section 553 of this title, is a secured claim to the extent of the value of such creditor's interest in the estate's interest in such property, or to the extent of the amount subject to setoff, as the case may be, and is an unsecured claim to the extent that the value of such creditor's interest or the amount so subject to setoff is less than the amount of such allowed claim. Such value shall be determined in light of the purpose of the valuation and of the proposed disposition or use of such property, and in conjunction with any hearing on such disposi-

### I. Modification under § 1322(b)(2)

The statute provides, in relevant part, that "the plan may—modify the rights of holders of secured claims, *other than a claim secured only by a security interest in real property that is the debtor's principal residence* ..." 11 U.S.C. § 1322(b)(2) (emphasis added). The debtors contend that § 1322(b)(2) is inapplicable because Associates' claim is secured by additional collateral consisting of credit life and hazard insurance policies which name Associates as payee/beneficiary.

In support of their position, the debtors cite numerous cases where the courts have allowed modification when additional security exists. *See, e.g., Wilson v. Commonwealth Mortgage Corp.*, 895 F.2d 123 (3d Cir.1990) (security interest in appliances, machinery, furniture and equipment); *In re Klein*, 106 B.R. 396 (Bankr.E.D.Pa.1989) (security interest in hazard insurance proceeds, any personalty supplying heating to the debtors, and rents, profits, and issues of the premises); *In re Jakes*, 99 B.R. 393 (Bankr.M.D.Tenn.1989) (lien on the improvements and fixtures on a residence and the proceeds from the sale of such improvements and fixtures). Additional support for the debtor's position can be found elsewhere. "A claim secured by *any* other real property or by personal property of the estate or of the debtor, ... may be modified by the chapter 13 plan ... creditors may have security interests in other real property, ... or insurance proceeds. *All* such claims may be modified by a chapter 13 plan." 5 Collier on Bankruptcy ¶ 1322.06[1][a] at 1322–14, 15 (15th ed. 1984) (emphasis added; footnotes omitted).

Expressly on point are the cases the debtors cite which hold that credit life and hazard insurance policies constitute additional security. *Transouth Financial Corp. v. Hill*, 106 B.R. 145 (W.D.Tenn. 1989) (credit life and disability insurance); *In re Wilson*, 91 B.R. 74 (Bankr.W.D.Mo. 1988) (credit life, disability, and property damage insurance); *In re Stiles*, 74 B.R. 708 (Bankr.N.D.Ala.1987) (credit life insurance). In these cases, the courts found

that additional security existed so that the bar on modification in § 1322(b)(2) would not apply.

In attempting to distinguish the cases which go against its position, Associates makes two alternative arguments. First, Associates contends that in this case, the promissory note does not mention additional security whereas in *Wilson* and *Transouth*, the notes specifically referred to the additional security. The promissory note here states:

> SECURITY. I give you a Real Estate Mortgage dated the same as this loan agreement to assure that I keep the promises I have made in this loan agreement. The Real Estate Mortgage covers my real estate at 26 Rd. 5173 Bloomfield, New Mexico.

Associates' Exh. A. However, the mortgage, which bears the same date as the loan agreement, does refer to additional security. The mortgage provides:

> This mortgage secures the performance of the following obligations: ... The amount specified for insurance as provided in the statutory mortgage condition is $74,500 and the hazards to be insured against fire and loss.

Associates' Exh. A. Thus, the documents do show the existence of credit life and hazard insurance as an obligation to be performed for the benefit of Associates, the mortgagee which constitutes additional security.

Second, Associates contends that "common, 'boiler plate' language in mortgage instruments, referring to insurance, ... [does] not constitute additional security for the debt which would preclude the application of § 1322(b)(2)." Associates' brief, 8 (*citing, In re Ross*, 107 B.R. 759, 762 (Bankr.W.D.Okla.1989)). The insurance for which the debtor pays premiums constitutes the additional security, not the "boiler plate" language of the mortgage. Why would Associates be named as payee/beneficiary of the two policies if not to further secure its position? Associates' argument is defeated by its own conduct in accepting

tion or use or on a plan affecting such credi-    tor's interest.

the credit life and hazard insurance as collateral. *In re Stiles*, 74 B.R. 708, 710 (Bankr.N.D.Ala.1987).

The Court finds persuasive the cases which hold that credit life and hazard insurance policies constitute additional security. Therefore, the Court finds that the credit life and hazard insurance policies do constitute additional security and the debtors are not barred by § 1322(b)(2) from modifying Associates' claim.

The debtors' plan proposes separating the 7.2 acres into two parcels. There was no showing whether applicable nonbankruptcy law allows the separation. The debtors may separate the property if they can do so in conformity with nonbankruptcy law.

### II. Modification under 11 U.S.C. § 506(a)

Having found that § 1322(b)(2) does not operate to bar the modification of Associates' claim, the Court need not examine the debtors' alternative argument under § 506(a). However, there is a question concerning the value of the 1.2 acre portion of land with the debtor's residence. The value will determine the amount of Associates' secured claim. No evidence was presented on the value of the land and therefore the Court will not rule on that question.

### CONCLUSION

The Court finds that § 1322(b)(2) does not apply in this case and the debtors may modify Associates' claim if applicable non-bankruptcy law allows it. The Court cannot at this time confirm the plan because there has been no showing that the debtors are able to separate the property into two parcels in conformity with nonbankruptcy law. If it is possible to separate the property, the value of the two parcels of land must be set. If the parties cannot agree on valuation, a hearing will be set to determine the matter.

This memorandum opinion constitutes the Court's findings of fact and conclusions of law. Bankruptcy Rule 7052. An appropriate order shall enter.