In re Hattie DENT, Debtor.

Hattie DENT, Movant,

v.

ASSOCIATES EQUITY SERVICES CO., INC., Respondent.

Bankruptcy No. 90–11411.

United States Bankruptcy Court,
S.D. Georgia,
Augusta Division.

Aug. 28, 1991.

Cynthia A. Tannert, Terrance P. Leiden & Associates, Augusta, Ga., for movant.

Mary G. Colley, Surrett, Walker, Creson & Colley, P.A., Augusta, Ga., for respondent.

## ORDER

JOHN S. DALIS, Bankruptcy Judge.

In conjunction with hearing on confirmation of the debtor's proposed plan, hearing was held on the objection to confirmation brought by Associates Equity Services Co., Inc.[1] ("Associates"), a creditor, motion for relief from the automatic stay brought by Associates and the debtor's objection to the claim of Associates. Based upon the evidence submitted at hearing, stipulation of facts and briefs submitted, I make the following findings of fact and conclusions of law.

## FINDINGS OF FACT

On March 29, 1989 the debtor and Associates entered into a loan transaction. The loan agreement provided for an "amount financed" of Twenty–Three Thousand Seven Hundred Fifteen and 90/100 ($23,715.90) Dollars together with a "loan fee" of Two Thousand Three Hundred Seventy–One and 58/100 ($2,371.58) Dollars totaling a "principal balance" of Twenty–Six Thousand Eighty–Seven and 48/100 ($26,087.48) Dollars payable at a disclosed interest rate of 18% per annum amortized over a period of 180 months. The total of payments over the 180–month period was to be Seventy–Five Thousand Six Hundred Forty–Four and 09/100 ($75,644.09) Dollars. The "loan fee" of Two Thousand Three Hundred Seventy–One and 58/100 ($2,371.58) Dollars plus the "interest" over the 180–month amortization period of Forty–Nine Thousand Five Hundred Fifty–Six and 61/100 ($49,556.61) Dollars totalled the "finance charge" of Fifty–One Thousand Nine Hun-

---

1. The proof of claim filed by Associates in this matter was filed in the name of Associates Equity Services Co., Inc. The loan documentation attached to the proof of claim is in the name of Associates Financial Services Company of America, Inc. The objection to confirmation filed in this matter was filed in the name of Associates Financial Services of America, Inc. "Associates" as used in this order identifies the entity filing a claim in this case and referenced by the three names.

dred Twenty–Eight and 19/100 ($51,928.19) Dollars.[2]

The loan agreement provided in pertinent part to this proceeding

Prepayment. I have the right to pay in advance at any time. If I prepay in full, I will pay the principal balance remaining unpaid as of the date of prepayment plus accrued interest. If I prepay in full, no part of the loan fee will be refunded. Call Option. You [Associates] have the option to demand payment in full of my loan on the third anniversary date of the loan date of my loan and annually on each anniversary date thereafter. If you elect to exercise this option, I will be given written notice of the election at least 90 days before payment in full is due. I will pay all monies due on the date stated in the notice. If I fail to pay, you have the right to exercise any remedies permitted under this loan agreement or Deed To Secure Debt that secures this loan.

The loan fee was charged at the closing of the loan and is not rebatable upon early pay off or lender call.

As collateral for the loan, the debtor executed a deed to secure debt in favor of Associates granting to Associates a security interest in real property that is the debtor's principal residence. Pertinent to the matter now before the court, the deed to secure debt provided

[i]mmediately upon any such default said Grantee [Associates] its successors or assigns, shall be authorized to enter upon said premises and collect the rents therefrom to apply on the indebtedness hereby secured, and all tenants are hereby authorized and directed to pay all rent direct to said Grantee....

By addendum attached to the deed to secure debt, the debtor further agreed:

1. *Monthly Escrow Payments for Taxes and Insurance.* Borrower [debtor] shall pay to Associates on the same day monthly payments are due under the Note, an amount equal to one-twelfth of the sum of the following escrow items:

(a) annual taxes and assessments which may attain priority over this Deed [to secure debt];

(b) annual leasehold payments or ground rents on the Property, if any;

(c) annual hazard insurance premiums; and

(d) annual mortgage insurance premiums, if any. Associates may estimate the Escrow Payments due on the basis of current data and reasonable estimates of future escrow items. Borrower shall make the monthly Escrow Payments until the Note is paid in full.

The Escrow Payments shall be held in a deposit at a FIDC or FSLIC insured institution. Associates shall apply the Escrow Payments to pay the escrow items. Associates will not charge for holding and applying the Escrow Payments, analyzing the account or verifying the escrow items. Associates shall not be required to pay Borrower any interest or earnings on the Escrow Payments. Associates shall give to Borrower, without charge, an annual account of the Escrow Payments showing credits and debits to the Escrow Payments and the purpose for which each debit to the Escrow Payments was made. The Escrow Payments are pledged as additional security for the sums secured by this Deed.

On August 21,.1990, the debtor filed for relief under Chapter 13 of the Bankruptcy Code. The debtor's proposed Chapter 13 plan provided that Associates would be paid in full from payments made to the Chapter 13 trustee. Associates filed a proof of claim for Twenty–Five Thousand Eight Hundred Forty–Eight and 36/100 ($25,848.36) Dollars.[3]

The debtor's proposed plan, as it pertains to Associates, provides that the holders of

---

**2.** The quotation marks enclose terms as used in the loan documents.

**3.** As a part of the stipulation of facts submitted, the parties stipulated into evidence an affidavit of Diane Cobb relative to the escrow account.

The affidavit attempts to incorporate by reference a letter dated November 5, 1990 from Associates to the debtor and provides that the letter is attached to the affidavit as Exhibit "B." Exhibit "B" was omitted.

allowed secured claims are to retain the liens securing their claims and are to be paid in full from disbursements through the Chapter 13 trustee. The debtor proposes to pay Five Hundred Thirty–Five and No/100 ($535.00) Dollars per month to the trustee for a period of up to 60 months in order to pay all allowed claims in full. The debtor testified that she was employed and capable of making the monthly payments. The trustee reported that debtor was current in her plan payments.

## CONCLUSIONS OF LAW

The debtor objects to the proof of claim submitted by Associates contending that the proof of claim includes a component for interest which is excessive. Associates objects to confirmation of the debtor's proposed plan and seeks relief from stay in order to foreclose its security interest contending that the proposed plan violates the provisions of 11 U.S.C. § 1322(b)(2) and therefore fails adequately to protect its interest.

■ Regarding the objection to claim, the debtor in brief submitted relies upon the analysis of the Supreme Court of Georgia in the case of *Norris v. Sigler Daisy Corporation,* 260 Ga. 271, 392 S.E.2d 242 (1990) and the Court of Appeals for the Eleventh Circuit decision in *Moore v. Comfed Sav. Bank,* 908 F.2d 834 (11th Cir.1990) in asserting that the loan in question violates the Georgia criminal usury statute, O.C.G.A. § 7–4–18[4]. I have had occasion to address the applicability of O.C.G.A. § 7–4–18 to a fact situation indistinguishable from this case. See *Evans v. AVCO Financial Services of Georgia, Inc.* (*In re Evans*), 130 B.R. 357, (Bankr. S.D.Ga. Augusta Div. Dalis, J. 1991). In *Evans,* I relied upon the decision of the Honorable Dudley H. Bowen, Jr., District Judge in *Moore v. Comfed Sav. Bank,* Case No. CV186–78 (S.D.Ga. Augusta Div. order dated June 5, 1991). Judge Bowen

determined that nonrebatable discount points of more than 5% of the principal balance charged at the inception of a loan renders the loan usurious under O.C.G.A. § 7–4–18.

> [T]he loans ... contained such exorbitant charges and were of such an unconventional nature as to be subject to enhanced scrutiny ... defendants attempt to avoid [O.C.G.A. § 7–4–18] by arguing that the charges in these loans, when spread over the term of the loan, would amount to less than five percent per month. This argument is unpersuasive and inapplicable in this case where the lender resorted to an unconventional and innovative method of charging for the use of money. *The loan documentation provided that the charges were earned at the time the loan was made and were not subject to rebate.* Accordingly, during the period from closing to date of the first payment due under the loan, [the lender] charged exorbitantly for the use of money at a rate substantially in excess of five percent per month. Therefore, the loans were clearly usurious and in violation of the Georgia statute.

*Comfed, supra,* at 4 (emphasis added).

Thus, "[w]here the loan terms include an additional interest charge as defined under O.C.G.A. § 7–4–18 which attaches upon the signing of the note and is nonrebatable upon early pay off or default, the analysis is not on a per annum basis [as in *Norris, supra* ]; rather, the analysis is monthly to determine whether in any given month, the interest charged exceeds five (5%) percent." *Evans, supra,* at 360–61.

■ In this case Associates charged in addition to simple interest a nonrebatable "loan fee" of Two Thousand Three Hundred Seventy–One and 58/100 ($2,371.58) Dollars. If the "loan fee" is interest rather than a fee for services rendered, I must determine if the combination of the simple interest charged on the "amount financed" during the first month of the loan and the

---

**4.** O.C.G.A. § 7–4–18 provides in pertinent part: Any person, company, or corporation who shall ... charge ... any rate of interest greater than 5 percent per month, either directly or indirectly, by way of ... any contract, contrivance, or device whatsoever shall be guilty....

nonrebatable "loan fee" results in a total interest charge in the first month of the loan which exceeds five (5%) percent. *Moore v. Comfed Sav. Bank,* 908 F.2d 834, 842 (11th Cir.1990). That the parties labeled the charge at issue a "loan fee" is not determinative of the issue of whether the charge constitutes a fee for services rendered or interest for purposes of O.C.G.A. § 7–4–18. *Evans, supra,* at 360. In Georgia "a lender's charge for service, when no service was in fact rendered or to be rendered the borrower, is a charge for the use of the money advanced and is therefore interest." *First Federal Sav. & Loan Ass'n v. Norwood Realty Co.,* 212 Ga. 524, 531, 93 S.E.2d 763, 768 (1956); *See also Williams v. First Bank & Trust Co.,* 154 Ga.App. 879, 269 S.E.2d 923, 925 (1980). Associates does not contend the charge is a fee for services rendered. The loan agreement stipulated into evidence clearly establishes that the "finance charge" of Fifty-One Thousand Nine Hundred Twenty-Eight and 19/100 ($51,928.19) Dollars is the total of the "loan fee" of Two Thousand Three Hundred Seventy-One and 58/100 ($2,371.58) Dollars plus the total "interest" paid during the life of the loan of Forty-Nine Thousand Five Hundred Fifty-Six and 61/100 ($49,556.61) Dollars. The "finance charge" is exactly what it says, a charge to the borrower for use of the lender's money. I find that the "loan fee," which is a component of the "finance charge," constitutes interest within the meaning of O.C.G.A. § 7–4–18. Because the "loan fee" accrued immediately and was nonrefundable, the charge constitutes interest applicable exclusively to the first month of the loan. The simple interest attributable to each month of the loan can be calculated as follows: the "amount financed" of Twenty-Three Thousand Seven Hundred Fifteen and 90/100 ($23,715.90) Dollars subtracted from the "total of payments" of Seventy-Five Thousand Six Hundred Forty-Four and 09/100 ($75,644.09) Dollars leaves a total cost of credit of Fifty-One Thousand Nine Hundred Twenty-Eight and 19/100 ($51,928.19), the "finance charge." The loan was amortized over a period of 180 months. The amount of simple interest attributable to each month was Two Hundred Eighty-Eight and 49/100 ($288.49) Dollars ($51,928.19 divided by 180 rounded to the nearest cent). *Norris, supra,* 242 S.E.2d at 243–244. The simple interest in the first month of the loan of Two Hundred Eighty-Eight and 49/100 ($288.49) Dollars, plus the "loan fee" of Two Thousand Three Hundred Seventy-One and 58/100 ($2,371.58) Dollars totals Two Thousand Six Hundred Sixty and 07/100 ($2,660.07) Dollars. The total interest for the first month of the loan, $the loan, $2,660.07, divided by the "amount financed" ($23,715.90) yields interest charged in the first month of the loan of 11.2%. Under O.C.G.A. § 7–4–18 the loan was usurious.

█ "The Georgia criminal usury statute is aimed at preventing excessive interest charges regardless of how the parties label the charges in the loan agreement. Permitting a lender to charge nonrefundable fees upon the execution of the loan, yet amortize the charges over the life of the loan in order to come within a perceived sixty (60%) percent per annum interest limitation (5% per month × 12 mos.), is inherently unfair to the borrower and inconsistent with the purpose of the statute." *Evans, supra,* at 360. The facts of this case support this determination. The debtor was charged at closing a nonrebatable loan fee for a loan amortized and payable over 180 months. However, the loan provided that Associates, at its option, could demand full payment of the loan on the loan's third anniversary. No portion of the loan fee is rebatable upon call of the loan. The terms of this loan included an interest charge in the form of a "loan fee" which attached upon the signing of the note and is nonrebatable upon early pay off, lender call, or default. The appropriate analysis is to determine whether in any given month, the interest charged exceeds five (5%) percent. A borrower's remedy when charged usurious interest in violation of O.C.G.A. § 7–4–18 is the forfeiture by the lender of all interest charged for the loan. *Norris, supra,* 392 S.E.2d at 244.

█ Associates objects to confirmation of the debtor's proposed plan contending

that the plan violates the provisions of 11 U.S.C. § 1322(b)(2).[5] The debtor contends that by taking a security interest in the escrow payments required under the deed to secure debt addendum and rents, the claim of Associates is not secured only by a security interest in real property that is the debtor's principal residence and is therefore subject to modification as are the rights of the holder of any other secured claim under § 1322(b)(2).

Many courts have considered what type of additional collateral may or may not remove the holder of a principal residence real estate secured claim from the protection afforded by § 1322(b)(2). *See, e.g., Wilson v. Commonwealth Mortgage Corp.,* 895 F.2d 123 (3rd Cir.1990); *In re Hougland,* 93 B.R. 718 (D.Ore.1988); *In re Caster,* 77 B.R. 8 (Bankr.E.D.Pa.1987); *In re Ross,* 107 B.R. 759 (Bankr.W.D.Okla. 1989); *In re Williams,* 109 B.R. 36 (Bankr. E.D.N.Y.1989); *Transouth Financial Corp. v. Hill,* 106 B.R. 145 (Bankr. W.D.Tenn.1989). In support of its objection, Associates relies upon the case of *Wright v. C & S Family Credit (In re Carolyn Wright),* 128 B.R. 838 (Bankr. N.D.Ga.1991). In *Wright,* the debtor sought to modify the maturity date and interest rate on an obligation owing to a creditor holding a security interest in the debtor's principal residence. The creditor held a security interest in the debtor's residence and applicable to this proceeding, rents and profits as well as unearned insurance premiums. The debtor argued that the lender was not protected under § 1322(b)(2) because rents and profits and unearned insurance premiums constituted collateral other than the debtor's principal residence. In reference to the rents and profits, I find the *Wright* analysis persuasive.

The rights of [the lender] to rents and profits, however, are incorporeal hereditaments, which are part of the possessory bundle of rights known as seizin and are, therefore, inextricably bound to the real

property itself. *See,* Pindar, *Georgia Real Estate Law & Procedure,* Third Edition (1986), § 21–14.2; *Stevens v. Worrill,* 137 Ga. 255, 73 S.E. 366 (1919). . . .

Further, the provisions of the security deed state that the right of [the lender] to collect rents and profits arises only upon the Debtor's default. The rights of [the lender] to collect rents and profits would mature following default and upon 'entry upon the property' by [the lender]. 'Entry upon the property' is a term of art which describes the contractual right of a creditor to take constructive possession of property after a default. Thus, the rights of [the lender] to rents and profits, reflected by the language of the Security Deed, do not constitute separate items of collateral.

*Wright, supra,* at 843–44 (footnotes omitted). In the case before me, the language of the deed to secure debt provided *"immediately upon any such default said Grantee [Associates], its successors or assigns, shall be authorized to enter upon said premises* and collect the rents therefrom to apply on the indebtedness hereby secured, and all tenants are hereby authorized and directed to pay all rent direct to said Grantee."* (emphasis added). The provisions of this deed to secure debt and the provisions of the security instrument relative to rents analyzed in *Wright* are for all practical purposes identical. The right to collect rents is part of the possessory bundle of rights which are inextricably bound to the real estate itself and does not constitute other security which would remove the claim of Associates from the protection of § 1322(b)(2). However, I do not find the *Wright* decision applicable to the issue of the security interest in the escrow payments.

■ In *Wright,* the right of the lender to returned, unearned and payable insurance premiums did not accrue until foreclosure. Additionally, the right to these premiums

**5.** 11 U.S.C. § 1322(b)(2) provides in pertinent part:

(b) Subject to subsections (a) and (c) of this section, the plan may—

(2) modify the rights of holders of secured claims, other than a claim secured only by a security interest in real property that is the debtor's principal residence. . . .

was not included in the description of the collateral in the habendum clause of the security deed and therefore did not constitute additional security for the debt in the "common sense" use of the term in § 1322(b)(2). *Wright, supra,* at 844. In this case, the addendum to the deed to secure debt granted a present security interest in the escrow payments. The security interest affixed immediately upon the creation of the escrow account and attached to each payment made by the debtor to the account.. The right or security interest of the lender in and to the escrow payments was not contingent upon default. The collateral described in the addendum to the deed to secure debt was the escrow payments. The habendum clause of the deed to secure debt was modified by the addendum to include the escrow payments.

The escrow account is not an incorporeal hereditament which is part of the possessory bundle of rights known as seizin in property. Escrow payments are cash payments by a debtor to the lender and retained by the lender for the purpose of paying taxes and insurance. While the obligation to pay taxes may exist from the ownership of real property, it is not a possessory right. The obligation to maintain property insurance is a covenant contained in the deed to secure debt and is a contractual obligation between the debtor and the lender. The cash escrow payments are separate and distinct from the real property. Therefore, the taking of a security interest in property other than the debtor's principal residence, the escrow payments, removed Associates' secured claim from the limitation of § 1322(b)(2). 5 *Collier on Bankruptcy,* ¶ 1322.06, 1322–14–15 (L. King 15th ed. 1991).

■ Associates contends that it failed to perfect its security interest in the escrow account and to the extent of that collateral,

the security interest is unenforceable pursuant to 11 U.S.C. § 544 and § 545. Therefore, Associates argues, it is not the holder of "a claim secured" by a security interest in property other than the debtor's principal residence. It is true that "[t]he use in § 1322(b)(2) of the phrases 'holders of secured claims' and 'other than a claim secured only by,' when read together with other applicable sections of the Bankruptcy Code, including § 101(4) and (33), § 544 and § 545, establishes that only properly perfected secured claims will be considered relevant in determining whether the § 1322(b)(2) exception applies," *Wright, supra,* at 843; however, Associates' claim that it holds an unperfected security interest in the escrow payment account is incorrect. The debtor, in conjunction with her regular monthly payment, paid money to Associates for deposit into the escrow account. The escrow account was maintained by Associates, not by the debtor. The addendum to the deed to secure debt granted Associates a present security interest in the escrow payments, the money, paid by the debtor to Associates and, under O.C.G.A. § 11–9–305,[6] Associates perfected its security interest by possession. *Matter of O.P.M. Leasing Services, Inc.,* 46 B.R. 661, 670 (Bankr.S.D.N.Y.1985). *See also In re Atlanta Times, Inc.,* 259 F.Supp. 820, 827 (N.D.Ga.1966), *aff'd subnom, Sanders v. National Acceptance Co. of America,* 383 F.2d 606 (5th Cir.1967); *In re Northeastern Intern. Airways, Inc.,* 99 B.R. 487, 488–89 (Bankr.S.D.Fla.1989).

Associates further contends that it released the escrow payments to the debtor and cancelled the addendum to the deed to secure debt in November, 1990.[7] As of the date of filing of the debtor's Chapter 13 case, August 21, 1990, Associates held a valid, perfected security interest in the es-

---

**6.** O.C.G.A. § 11–9–305 provides in pertinent part:

A security interest in letters of credit and advices of credit ..., goods, instruments, *money,* negotiable documents, or chattel paper may be perfected by the secured party's possession of the collateral. (emphasis added).

**7.** Associates, through counsel, makes this assertion in brief submitted. From the brief it appears that the omitted Exhibit "B" from the affidavit of Diane Cobb cancels the escrow account and acts as a transmitted letter for the escrow account balance to the debtor. Cancelled check dated November 5, 1990 in the amount of $344.72 endorsed by the debtor was Exhibit "A" to the affidavit.

crow payments. While a secured creditor may release all or part of any collateral securing its claim before bankruptcy, O.C.G.A. § 11–9–406, *In re Ivey*, 13 B.R. 27 (Bankr.W.D.N.C.1981), a secured creditor cannot, postpetition, improve its position under § 1322(b)(2) by releasing its lien against only part of its collateral. *In re Baksa*, 5 B.R. 184, 187 (Bankr.N.D.Ohio 1980). *See also Wilson v. Commonwealth Mortg. Corp.*, 895 F.2d 123, 129 (3rd Cir. 1990). "Where a creditor, with knowledge that a Chapter 13 petition and plan [have been filed], cancels its secured interest in a portion of the property of the debtor, it holds as security, with the intent of circumventing and abusing the provisions of Chapter 13, the creditor is not acting in good faith." *Baksa, supra*, at 187.

Creditors sometimes demand real property and personal property to secure the same debt. Even purchase money mortgages often take incidental security interest in appliances, furniture and other personalty. Other creditors may have security interests in other real property, rents, *escrow accounts*, bank accounts, motor vehicles or insurance proceeds. *All such claims may be modified by a chapter 13 plan, and a creditor may not protect its claim from modification by relinquishing its other liens after a bankruptcy is filed.*

5 *Collier on Bankruptcy*, ¶ 1322.06, 1322–14–15 (L. King 15th ed. 1991) (footnotes omitted) (emphasis added). Associates' postpetition release of its security interest in the debtor's escrow account payments is irrelevant for purposes of a § 1322(b)(2) analysis. At the time of the debtor's filing under Chapter 13, Associates held a valid, perfected security interest in the escrow account payments.

■ The motion for relief from the automatic stay of 11 U.S.C. § 362(a) by Associates in order to foreclose its security interest is without merit. Associates contends that it is not adequately protected by the proposed plan of the debtor because the debtor seeks to include the secured claim of Associates in her Chapter 13 plan to be paid from disbursements by the Chapter 13 trustee. Associates argues this is an attempt to modify the terms of the agreement giving rise to the secured claim. Having determined that the exception to modification of the rights of a holder of a secured claim under § 1322(b)(2) is not applicable to this creditor, I find that merely including the claim to the extent allowed under the provisions of the plan does not in and of itself establish a lack of adequate protection. In this case, as of the confirmation hearing, the debtor was current in her plan payments to the Chapter 13 trustee, was employed and appeared capable of meeting the plan payments. Feasibility of the plan based upon the proposed payments is dependent upon the outcome of the debtor's objection to the claim of Associates. A debtor provides "adequate protection" as contemplated under § 362(d)(1) to each holder of an allowed secured claim by making preconfirmation payments to the Chapter 13 trustee. 11 U.S.C. § 361(1); *In re Coplin*, Ch. 13 Case No. 486–00886, 1987 WL 61929 (Bankr.S.D.Ga. Dublin Div. Davis, J. 1987). Under § 362(g) the party opposing relief, the debtor in this case, bears the burden of proof on all issues, including adequate protection, other than debtor's equity in property in a hearing under either § 362(d)(1) or (2). In this case, the debtor has met her burden of proof by a preponderance of the evidence establishing that the interest of Associates is presently adequately protected under the proposed plan.

It is therefore ORDERED that the objection to confirmation of Associates is overruled;

further ORDERED that the motion for relief from the automatic stay of § 362(a) brought by Associates is denied;

further ORDERED that debtor's objection to the claim of Associates is sustained; and

further ORDERED that within fifteen (15) days of the date of this order, Associates shall amend its proof of claim to an

amount equal to the "amount financed" of Twenty–Three Thousand Seven Hundred Fifteen and 90/100 ($23,715.90) Dollars less all payments received on the loan. The clerk shall notice the matter for continued confirmation hearing.