**In the Matter of Joseph Clifford GRAHAM & Wilma Louise Graham Debtors.**

**Bankruptcy No. 91–40384.**

United States Bankruptcy Court,
N.D. Indiana,
Hammond Division,
at Lafayette.

June 30, 1992.

David Rosenthal, Lafayette, Ind., for debtors.

Barry T. Emmerson, Delphi, Ind., for Salin Bank.

## DECISION

ROBERT E. GRANT, Bankruptcy Judge.

This matter is before the court to consider confirmation of a proposed Chapter 13 plan and the preliminary objections thereto filed by Salin Bank. These objections involve whether or not the bank is entitled to the protection of § 1322(b)(2). If the court determines that it is, the proposed plan may not be confirmed. If, on the other hand, the court would determine that the bank is not entitled to these protections further evidentiary proceedings will be required with regard to confirmation.

■ Section 1322(b)(2) of the United States Bankruptcy Code limits the manner in which a proposed plan can deal with the claim of a residential mortgagee. It provides that the plan may

modify the rights of holders of secured claims, other than a claim secured only by a security interest in real property that it is the debtor's principal residence.... 11 U.S.C. § 1322(b)(2).

The precise issue before the court concerns whether or not Salin Bank holds liens upon real property other than the debtor's principal residence. It is not disputed that the bank loaned money to the debtors which was secured by a mortgage on their home. Subsequently, however, the bank loaned the debtors additional funds which were secured by mortgages on other, nonresidential, real estate. In addition to the standard preprinted language contained in these latter mortgage forms, each also contained the following typed provision:

This mortgage shall also secure any indebtedness of the borrower or either of them to the lender now existing or hereafter incurred until said debts are paid in full.

Debtors contend that, as a result of these provisions, the nonresidential real estate also secures their home loan, thus depriving Salin Bank of the protection of § 1322(b)(2). The bank first counters that such "boiler plate" language does not operate to deprive it of the protection. Alternatively, it argues that any liens it may have on other nonresidential real estate by virtue of these clauses have no value. Therefore, by operation of § 506, they are not secured claims, and the bank's only true lien is on the debtors' residence, thereby entitling it to the protections of § 1322(b)(2).

■ Whether an agreement between parties creates a valid lien depends on state law. *Matter of Martin Grinding and Machine Works, Inc.*, 793 F.2d 592, 594 (7th Cir.1986), *citing Butner v. United States*, 440 U.S. 48, 54–57, 99 S.Ct. 914, 917–19, 59 L.Ed.2d 136 (1979). Thus, the first issue that this court must confront is whether or not the dragnet or cross-collateralization clauses in the subsequent mortgages were sufficient, as a matter of Indiana law, to allow those subsequent mortgage liens to also secure the residential loan. Under Indiana law, "[t]he intent of the parties to the contract controls the operation of a dragnet clause." *Smith v. Union State Bank*, 452 N.E.2d 1059, 1063 (Ind.App. 1983). *See generally In re Krause*, 114

B.R. 582, 591–94 (Bankr.N.D.Ind.1988) (discussing Indiana law on security interests).

In this instance, it is clear that the parties intended that the subsequent liens upon nonresidential real estate would also secure the residential loan. The cross-collateralization or dragnet clause is not preprinted boiler plate. It was, instead, a conscious addition to the terms contained on the preprinted forms. The court must conclude that the parties, by adding a dragnet clause, intended that the nonresidential real estate would also secure payment of the prior residential loan. Consequently, as a matter of Indiana law, the home loan is secured not only by debtors' residential real estate but is also secured by their nonresidential real estate as well.

The bank suggests that bankruptcy courts have consistently disregarded such boiler plate language in determining whether or not the protections of § 1322(b)(2) are available. This suggestion is not entirely accurate. More courts seem to hold that such language does deprive the lenders of these protections than those which hold they do not. *Compare In re Hougland,* 93 B.R. 718, 720–21 (D.D.Ore.1988) *aff'd* 886 F.2d 1182 (9th Cir.1989); *In re Ireland,* 137 B.R. 65, 70–71 (Bankr.M.D.Fla.1992) (fixtures, credit life, and disability policies were not other collateral); *Matter of Moreland,* 124 B.R. 921, 922 (Bankr.D.Conn. 1991) (rents, royalties, gas rights, etc. were not other collateral); *In re Wright,* 128 B.R. 838, 843 (Bankr.N.D.Ga.1991) (machinery, apparatus, equipment, fittings and fixtures attached to real property are covered by liens on the real property and extra language securing it is superfluous and will not take lien out of protections of § 1322(b)(2)); *In re Carter,* 116 B.R. 156, 157 (Bankr.W.D.Mo.1990) (mobile home trailer was so affixed to outward walls that it was residential real property for purposes of § 1322(b)(2)); *In re Diquinzio,* 110 B.R. 628, 629 (Bankr.D.R.I.1990) (contingent interest in life insurance policy is not additional security); *In re Williams,* 109 B.R. 36, 39 (Bankr.E.D.N.Y.1989) (refrigerator, window shades and realty fixtures had nominal value and were not other security); *In re Ross,* 107 B.R. 759, 762 (Bankr.W.D.Okl.1989) (insurance, rents, profits, and building improvements were not other security); *Matter of Foster,* 61 B.R. 492, 495 (Bankr.N.D.Ind.1986) (Federal Land Bank stock has no independent value and is therefore not additional collateral) *with, Wilson v. Commonwealth Mortgage Corp.,* 895 F.2d 123, 128–29 (3rd Cir.1990) (appliances, machines, furniture and equipment were other collateral); *Secor Bank, Federal Savings Bank v. Dunlap,* 129 B.R. 463, 465 (D.E.D.La.1991) (easements, rights, appurtenances, rents, royalties, mineral, oil, and gas rights and profits, water rights and stock and all fixtures and funds escrowed for taxes and insurance were other collateral); *Transouth Financial Corp. v. Hill,* 106 B.R. 145 (D.W.D.Tenn.1989) (credit life, disability and property damage insurance were other collateral); *In re Reeves,* 65 B.R. 898, 901 (D.N.D.Ill.1986) (fixtures are not real property, therefore, they are other collateral); *In re Jackson,* 136 B.R. 797, 800–03 (Bankr.N.D.Ill.1992) (fixtures and insurance proceeds were not other collateral because they were bound to the land; rents, however, were other collateral); *In re Taras,* 136 B.R. 941, 951 (Bankr.E.D.Pa.1992) (appliances, machinery, furniture, equipment, reversions and remainders, rents, issues and profits of the real estate were other collateral); *In re Dent,* 130 B.R. 623, 628–29 (Bankr.S.D.Ga.1991) (rents were not other collateral; escrow payments, however, were other collateral); *In re Selman,* 120 B.R. 576, 578–79 (Bankr.D.N.M.1990) (credit life and hazard insurance policies are other collateral); *In re Kessler,* 99 B.R. 635, 637 (Bankr.E.D.Pa.1989) (fixtures, appliances and other appurtenances to the realty were other collateral); *In re Klein,* 106 B.R. 396, 400–01 (Bankr.E.D.Pa.1989) (hazard insurance proceeds, heating personalty and possible undesignated collateral securing other loans were all other security); *In re Wilson,* 91 B.R. 74, 76 (Bankr.W.D.Mo.1988) (credit life, disability, and property damage insurance were other collateral); *In re Stiles,* 74 B.R. 708, 710 (Bankr.N.D.Ala.1987) (credit life insurance was other collateral); *In re Caster,* 77 B.R.

8, 11–12 (Bankr.E.D.Pa.1987) (nonfixture appliances, rents, issues and profits were other collateral); *In re Jablonski,* 70 B.R. 381, 386 (Bankr.E.D.Pa.1987) *aff'd on other grounds,* 88 B.R. 652 (D.E.D.Pa.1988) (appliances, rents, issues and profits were other collateral); *In re Jakes,* 99 B.R. 393 (Bankr.M.D.Tenn.1989) (proceeds from sale of improvements and fixtures of residence was other collateral); *United Companies Financial Corp. v. Brantley,* 6 B.R. 178, 189–90 (Bankr.N.D.Fla.1980) (assignment of life insurance policy plus unearned premiums was other collateral).

More importantly, the types of clauses which have been disregarded for the purposes of § 1322(b)(2) are dramatically different from those now before the court. In each of those cases the "boiler plate" language in question referred to liens upon other items or interests which were intimately associated with the residential real estate in question.

For example, in *Matter of Moreland,* 124 B.R. 921 (Bankr.D.Conn.1991), the mortgage extended not only to the residential real estate but also to the "rents, royalties, ... oil and gas rights and profits, ... stock and all fixtures now or hereafter a part of the property." *Id.* at 922. The court held that this language did "not create additional collateral for the claim distinct from that normally considered incidental to ownership of realty within the contemplation of § 1322(b)(2)." *Id.* Similarly, in the case of *In re Ross,* 107 B.R. 759 (Bankr.W.D.Okl. 1989) and its unpublished predecessor *Tinsley,* the court also dealt with the insurance, rents, profits, building improvements, and other security associated with the residential real estate.

The court in *In re Dent,* 130 B.R. 623 (Bankr.S.D.Ga.1991), recognized this distinction between other collateral connected to the real estate and that not connected to the real estate. A creditor had taken a security interest in rents and in escrow payments as well as in the residential real estate. The court stated that:

[t]he right to collect rents is part of the possessory bundle of rights which are inextricably bound to the real estate itself and does not constitute other security.... *Id.* at 628.

Escrow payments, on the other hand, were "not an incorporeal hereditament which is part of the possessory bundle of rights" associated with real estate. Thus, it did constitute "other security" for purposes of § 1322(b)(2). *Id.* at 629. *See also In re Jackson,* 136 B.R. 797 (Bankr.N.D.Ill.1992) (fixtures are part of possessory bundle of rights, but rents are not).

Although courts may differ on what property is so associated with residential real estate that is not additional security, *compare Dent,* 130 B.R. 623 (rents are intimately associated with real estate and, thus, are not other security), *with Jackson,* 136 B.R. 797 (rents are not intimately associated with real estate and are, thus, other security) the dragnet clauses in Salin Bank's subsequent mortgages create dramatically different rights than those which have been considered by other bankruptcy courts. As a result of these provisions in the subsequent security documents, Salin Bank not only has liens upon debtors' residence and the rights intimately associated with the ownership of that property,[1] but also real property and the rights associated with it separate and distinct from the debtors' residence. These rights in totally independent property are not rights which the court can overlook.

■ Given the value of the nonresidential real estate in relationship to the amounts due on account of the loans against it, the liens created by the dragnet clause which causes the residential loan to be secured by nonresidential real estate have no value and thus, pursuant to § 506(a), do not give rise to secured claim. Consequently, at least as of the date of the petition, the lien upon the additional collat-

1. The residential mortgage grants Salin Bank a lien upon the real estate described "together with all the rights, privileges, interests, easements, hereditaments, and appurtenances thereunto belonging and all fixtures and appliances now or subsequently attached to or used in connection with said premises and all the rents, issues, income and profits of said premises." This provision is not unlike those which some bankruptcy courts have elected to ignore.

eral was economically worthless, because the value of the nonresidential real estate was not sufficient to satisfy the original mortgage amount and still leave monies remaining which could be applied towards the residential mortgage. Given this scenario, the only valuable lien securing the residential loan is the lien upon the residential real estate. Thus, the bank argues that, notwithstanding its efforts to take additional collateral, it is still entitled to the protections of § 1322(b)(2).

The court rejects this argument. Only a few cases appear to have dealt with a creditor's efforts to avoid the consequences of having taken property, other than residential real estate, as security for a loan in order to claim the protection of § 1322(b)(2). Only once was the creditor successful. In *In re Ivey*, 13 B.R. 27 (Bankr.W.D.N.C.1981), the creditor had released the additional collateral from the scope of its lien months prior to the petition. The court held that this was permissible, given the timing of the creditor's actions which were apparently unrelated to the debtors' subsequent financial problems, and accorded the creditor the protections of § 1322(b)(2). A different scenario was presented by *In re Baksa*, 5 B.R. 184 (Bankr.N.D.Ohio 1980) in which the creditor attempted to release its nonresidential security after the date of the petition and, having done so, claim the protection of § 1322(b)(2). Given the post-petition timing of its actions, the creditor's efforts did not succeed and the court refused to award it the protections it claimed.

The court in *In re Dent*, 130 B.R. 623 (Bankr.S.D.Ga.1991) agreed with the *Baksa* Court that post-petition releases had no effect on a creditor's § 1322(b)(2) status. The only relevant inquiry was whether "[a]t the time of the debtor's filing under Chapter 13, [the creditor] held a valid perfected security interest in the [other collateral]." *Id.* at 630. Thus, that creditor's post-petition release of the debtor's escrow account was irrelevant for the § 1322(b)(2) analysis. *See also* 5 *Collier on Bankruptcy*, ¶ 1322.06 at 1322–16 (15th ed. 1992) ("a creditor may not protect its claim from modification by relinquishing its other liens after a bankruptcy is filed").

This court is persuaded that whether or not a creditor holds liens upon property other than real estate constituting the debtors' residence should be determined according to state law as of the date of the petition, independently of post-bankruptcy events. The issue should be whether or not, as a matter of state law, the obligation in question was secured by something other than residential real estate. The effect of the debtors' bankruptcy petition on those liens is not relevant. Consequently, the fact that a lien is economically worthless and, thus, does not constitute a secured claim pursuant to § 506(a), is not relevant, because the lien, nonetheless, exists as a matter of state law. We are concerned merely with the lien's existence, not with its economic value or its bankruptcy survivability.

To accept the movant's argument would potentially result in very anomalous consequences if its application is applied in other scenarios involving lien avoidance rights. Potentially, the lien upon the additional property in question could be a nonpossessory, nonpurchase money security interest avoidable by the debtors pursuant to § 522(f). To adopt the movant's position, however, which requires us to focus upon the post-petition viability of the lien given the operation of the bankruptcy laws upon it, would potentially prevent the debtors from seeking to avoid the lien, because by doing so they would grant the creditor rights to which it would not otherwise be entitled. Similar problems could also be encountered with efforts to avoid unperfected liens upon additional collateral which are vulnerable to the trustee's strong arm powers under § 544, preferential liens which are vulnerable under § 547, or liens which are avoidable as a fraudulent conveyance pursuant to § 548. Rather than working to deprive the creditor to something to which it was not entitled as a matter of bankruptcy law, avoidance of such liens, which is supposed to be for the benefit of all creditors, would actually operate to grant rights to the creditor to which

it would not have been entitled but for the avoidance.

For all of the foregoing reasons, the court concludes that Salin Bank is not entitled to the protections of § 1322(b)(2) of the Bankruptcy Code. The remaining issues raised by its objection to confirmation of the proposed plan will proceed to trial as previously scheduled.