**In re William B. GREEN, Jr., Alice A. Green, Debtors.**

**No. 6:03–BK–1897–KSJ.**

United States Bankruptcy Court,
M.D. Florida,
Orlando Division.

June 8, 2004.

---

**13.** For language of § 9–203(1)(a), please see footnote 5, *supra.*

Jeanne A. Kraft, Wolff, Hill, McFarlin & Herron, P.A., Orlando, FL, for debtors.

Laurie K. Weatherford, Winter Park, FL, Chapter 13 Trustee.

Carolyn J. Adams, Assistant United States Attorney, Orlando, FL.

Ralph E. Hopkins, Assistant United States Attorney, Orlando, FL.

*MEMORANDUM OPINION SUSTAIN-ING DEBTORS' OBJECTION TO CLAIM NUMBER 7 FILED BY THE INTERNAL REVENUE SER-VICE*

KAREN S. JENNEMANN, Bankruptcy Judge.

This case came on for hearing on March 24, 2004,[1] on the debtors' Objection to Claim (the "Objection") (Doc. No. 59) and the Response of the Internal Revenue Service (the "IRS") (the "Response") (Doc. No. 63) filed in the debtors' Chapter 13 case. The issue is whether a pre-petition tax lien should be treated as a secured claim or as an unsecured claim where the IRS released the lien relating to the claim post-petition. Upon reviewing the evidence, the position of the parties, and the law, the court sustains the debtors' Objection to the IRS's claim.

The facts are largely undisputed. On February 28, 1994, the IRS assessed certain taxes, interest, and penalties against the debtors relating to the debtors' unpaid taxes for the 1989 tax year. In connection with the tax liability, on April 26, 1995, the IRS filed a Claim of Tax Lien in Orange County, Florida, which encumbers the debtors' home.

Over the years, the debtors made numerous payments on this debt to the IRS. (Debtors' Exh. No. 2). However, they were unable to continue making these payments and pay their living expenses. On February 26, 2003, the debtors filed this Chapter 7 liquidation case. A few months later, on June 27, 2003, one week after receiving their discharge, the debtors converted their Chapter 7 case to a case seeking reorganization under Chapter 13.

In the interim, after the IRS received notice that the debtors had filed a Chapter 7 case and received a discharge, on July 16, 2003, the IRS recorded a Certificate of Release of Federal Tax Lien (the "Release") (Debtors' Exh. No. 1) in Orange County, Florida, the county where the debtors' home is located. The attorney for the IRS stated that, when the IRS receives notice that a taxpayer has filed a Chapter 7 case, its policy is to affirmatively release any tax liens encumbering the taxpayer's property since the underlying debt will be discharged. Apparently, the IRS's computers automatically generate these releases. In this particular case, the IRS now claims it would *not* have generated the Release if it had known the debtors were going to convert their case to Chapter 13.

---

1. At the hearing, the court gave the parties until April 9, 2004, to submit additional law and case citations in support of their positions.

Shortly after conversion, the debtors filed Claim 6 on behalf of the IRS as an *unsecured* claim in the amount of $6,475.28.[2] However, the IRS later filed its own superceding proof of claim, Claim 7, which listed the 1989 debt as a *secured* claim in the amount of $31,233.67, representing approximately $27,416.29 in accrued interest and approximately $3,817.38 in penalties accrued up to the date of the petition.[3] If the IRS's position is sustained, allowing Claim 7 as a secured claim, the IRS's lien would encumber the debtors' homestead. The IRS then would be entitled to payment as a secured creditor in the amount of $31,233.67. Conversely, if the debtors' position is sustained allowing Claim 7 as an unsecured claim, the IRS is entitled to receive only pro rata payment as an unsecured creditor.

In their Objection, the debtors argue that the $31,233.67 secured claim filed by the IRS should only be allowed as an unsecured claim because the IRS voluntarily released its tax lien when it recorded the Release. The debtors argue that the automatic stay and the discharge received in connection with their Chapter 7 case now prevent the IRS's attempts to reinstate the tax lien as a secured claim in their Chapter 13 case.

In its Response, the IRS argues that Bankruptcy Code[4] Sections 362(a), 524(a), and 26 U.S.C.A. § 7433(e)(1) required it to release its lien on the debtors' home in order to avoid having to pay damages for willful violations of the automatic stay or discharge injunction. In addition, the IRS argues that Claim 7 should be allowed in full as a secured claim notwithstanding the Release because the lien was fully secured on the date the debtors filed their Chapter 7 petition.

▮ The IRS's position that it was required to take affirmative steps to release its tax lien against the debtors' home in order to avoid paying penalties or damages for violating the automatic stay or because the underlying tax debt was discharged in the debtors' Chapter 7 case is unsupported by any legal authority. The IRS cited 26 U.S.C.A. § 7433(e)(1) as the primary basis for its claimed internal policy of automatically generating releases of liens upon notice that a taxpayer has filed a Chapter 7 petition and/or that the taxpayer will receive a discharge; which provides:

(e) Actions for violations of certain bankruptcy procedures.—

(1) In general.—If, in connection with any collection of Federal tax with respect to a taxpayer, any officer or employee of the Internal Revenue Service willfully violates any provision of section 362 (relating to automatic stay) or 524 (relating to effect of discharge) of title

---

**2.** The IRS is not the only creditor asserting a lien upon the debtors' home. Two other creditors, Chase Manhattan Mortgage Company and Countrywide Home Loans, also assert mortgages encumbering the debtors' homestead for $141,206.91 and $15,451.24, respectively. The debtors value their home at $192,000. The IRS acknowledges that its claim should not be treated as a priority claim, but only as a secured claim.

**3.** On the first and second pages of Claim 7 filed by the IRS, the IRS listed its claim as a secured claim in the amount of $31,233.67. However, on the third page of the claim, the total amount is slightly higher, $32,417.55. At the hearing, the IRS cited yet another slightly different amount, asserting that its secured claim totaled $31,412.73, representing $27,732.55 in accrued interest and $3,680.18 in accrued penalties. As the documentation supporting the $31,233.67 amount is the most coherent, the court accepts this number as the total requested in Claim 7 and rejects the $32,417.55 and $31,412.73 figures.

**4.** Unless otherwise stated, all references to the Bankruptcy Code refer to Title 11 of the United States Code.

11, United States Code (or any successor provision), or any regulation promulgated under such provision, such taxpayer may petition the bankruptcy court to recover damages against the United States.

This statute in no way requires the IRS to take any affirmative action to release a lien against a taxpayer's property upon learning that a taxpayer/debtor has filed for bankruptcy relief. Rather, the statute merely provides that damages can be sought if an officer or employee of the IRS willfully violates the automatic stay or the discharge injunction. Indeed, *any* party committing a willful violation of either of these fundamental bankruptcy protections can be required to pay damages. Thus, 26 U.S.C.A. § 7433(e)(1) has little, if any, relevance and does not bolster the IRS's position here.

However, a statute that was not cited by the IRS, Title 26 of the Internal Revenue Code, Section 6325, *is* relevant and governs the release of tax liens by the IRS. Subsection (a)(1) of that section provides that a lien shall be released when "[t]he Secretary finds that the liability for the amount assessed, together with all interest in respect thereof, has been fully satisfied or has become legally unenforceable."

■ Contrary to the IRS's argument here that it is required to release tax liens against a taxpayer's property when a taxpayer files a Chapter 7 case, in *In re Isom*, 901 F.2d 744, 745 (9th Cir.1990), the Court of Appeals for the Ninth Circuit concluded just the opposite. In *Isom*, the Court held that 26 U.S.C. § 6325(a)(1) does *not* require the IRS to release valid, secured, tax liens when the underlying tax debt is discharged in bankruptcy because the lien is still enforceable against a debtor's property *in rem*. *Isom*, 901 F.2d at 745. Rath-

er, allowing such "liens to remain alive does not defeat the purpose of § 6325 because Congress intended for valid tax liens to survive bankruptcy." *Isom*, 901 F.2d at 745–46. Accordingly, there is no affirmative requirement that the IRS release a valid tax lien secured by a debtor's property even though the underlying tax obligation is discharged. *In re Dillard*, 118 B.R. 89 (Bankr.N.D.Ill.1990); *Johnson v. Home State Bank*, 501 U.S. 78, 84, 111 S.Ct. 2150, 115 L.Ed.2d 66 (1991) ("[A] bankruptcy discharge extinguishes only one mode of enforcing a claim—namely, an action against the debtor *in personam*—while leaving intact another—namely, an action against the debtor *in rem*") (*italics added*); *In re Dinatale*, 235 B.R. 569 (Bankr.D.Md.1999) ("Valid federal tax liens ... pass through bankruptcy unscathed as to a debtor's prepetition property or rights to property.") (*citing Dewsnup v. Timm*, 502 U.S. 410, 417, 112 S.Ct. 773, 116 L.Ed.2d 903 (1992)). Therefore, under ordinary circumstances, a valid secured tax lien would remain enforceable against a debtor's property even after a debtor receives a discharge.

■ Despite the reality that the IRS was not required to release its tax lien, here, the IRS affirmatively and voluntarily extinguished its lien against the debtors' home when it recorded the Release. By effecting this post-petition release of lien, the IRS "relinquished its preferred status as the holder of a [secured] tax lien." *In re Miller*, 98 B.R. 110, 112 (Bankr.N.D.Ga. 1989). Title 26 of the Internal Revenue Code, Section 6325(f)(1)(A), specifically provides that if a certificate of release is issued by the Secretary and filed in the same office as the notice of lien to which it relates, the certificate "*shall be conclusive that the lien referred to in such certificate*

*is extinguished.*" [5] *(emphasis added)*. Accordingly, under the plain and unequivocal language of the statute, the certificate of release issued and recorded by the IRS is "conclusive proof" that the IRS's tax lien is extinguished. *U.S. v. Winchell,* 793 F.Supp. 994, 996 (D.Co.1992) *(citing Freitag v. The Strand of Atlantic City,* 205 F.2d 778, 781 (3rd Cir.1953) ("[T]his peremptory and sweeping statutory language can be avoided only by a showing of actual fraud in the procurement of the discharge")). Accordingly, the IRS is not entitled to assert Claim 7 as a secured claim because it extinguished its tax lien underlying this claim. *See In re Miller,* 98 B.R. 110, 112–13 (Bankr.N.D.Ga.1989) (Once IRS issued a post-petition Certificate of Discharge releasing its tax lien pursuant to 26 U.S.C. § 6325(b)(2), IRS held only an unsecured claim and no longer held a perfected tax lien against the debtors' property; IRS's attempted post-petition levy on the debtors' property was "a clear and overt violation of the automatic stay").

■ In connection with the IRS's argument that its claim should be allowed as a secured claim because the claim was secured on the date the debtors filed their Chapter 7 petition, even though the lien was voluntarily released later, the IRS cited the decision of *In re Graham,* 144 B.R. 80 (Bankr.N.D.Ind.1992). However, *Graham* is not on point. In *Graham,* the issue before the court was whether a secured creditor's lien was secured only by the debtor's principal residence or also by other collateral. The scope of the secured collateral was relevant in ascertaining whether the creditor's claim fell within the protection afforded by Section 1322(b)(2).[6] The *Graham* court's discussion was specific and limited to the issue of whether, and when, an obligation was secured by property in addition to real property that is the debtor's principle residence, and no more.

To wit, in the portion of the *Graham* opinion relied upon by the IRS in this case for the proposition that its lien should be deemed secured because it was, undisputedly, secured as of the date the debtors filed their Chapter 7 petition, the court cited three cases that addressed the release of liens by creditors. In two of the three cases, creditors attempted to improve their lien positions post-petition by releasing security interests in property other than the real property constituting the debtors' principal residences in attempts to invoke the protection of Section 1322(b)(2). *See In re Baksa,* 5 B.R. 184 (Bankr.N.D.Ohio 1980) (denying a creditor's post-petition attempts to release a security interest in the debtor's nonresidential real property in order to gain the protections of Section 1322(b)(2)); *In re Dent,* 130 B.R. 623 (Bankr.S.D.Ga.1991) (agreeing with *Baksa* that post-petition releases of collateral do not effect a creditor's Section 1322(b)(2) status, and that the "relevant inquiry was whether '[a]t the time of the debtor's filing under Chapter 13, [the creditor] held a valid perfected security interest in the [other collateral].'") In the third case, *In re Ivey,* 13 B.R. 27 (Bankr.W.D.N.C.1981), the court did permit a creditor to invoke the protections of Section 1322(b)(2) because the creditor seeking the protection had re-

---

**5.** There are exceptions to this rule, contained in 26 I.R.C. §§ 6325(2) and (3); however, neither party argues that any of these exceptions applies here.

**6.** Section 1322(b)(2) prohibits the modification of the rights of holders of claims secured only by a security interest in real property that is the debtor's principal residence. If a lien holder can look to other collateral besides the homestead, the creditor is not entitled to benefit from § 1322(b)(2).

leased the additional collateral from the scope of its lien months before the debtor filed for bankruptcy. Accordingly, this particular issue in *Graham* is distinguishable from the issue presented here: whether a lien secured *only* [7] by the debtors' home that is unequivocally extinguished post-petition can be revived or reinstated after a discharge is entered. *Graham* certainly does not stand for the proposition that a creditor, who was secured on the petition date, is entitled to resurrect a lien when the creditor voluntarily releases the lien post-petition.

As such, Claim 7 is not a secured claim because the IRS extinguished the lien post-petition by recording the Release. The IRS is entitled to allowance of Claim 7 as an unsecured claim and will receive pro-rata distribution on its unsecured claim along with other unsecured creditors. A dispute remains, however, as to the exact dollar amount of the claim. In Claim 6 and in the Objection, the debtors' assert that they owe the IRS a significantly lesser amount, $6,475.28, than the amount requested by the IRS in Claim 7, $31,233.67. The debtors did not attach any documentation to Claim 6 supporting the lesser amount. In the Objection, the debtors did attach documentation, found in Exhibit B, which they assert as the basis for the lesser claim amount. However, upon review of this Exhibit, the court cannot discern any basis to disallow the $31,233.67 claim in favor of the lesser claim amount asserted by the debtors. Exhibit B is a transcript of the debtors' 1989 federal tax liability. The computer printout lists numerous payments made by the debtors to reduce the underlying tax liability but does not calculate the interest or penalty charges sought by the IRS in Claim 7 or demonstrate any reason why such interest or penalty charges are not due. Accordingly, Claim 7 is allowed as an unsecured claim in the amount of $31,233.67.

■ Turning to the debtors' arguments that the automatic stay and the discharge received in connection with their Chapter 7 case now prevent the IRS's attempts to reinstate its tax lien as a secured claim in their Chapter 13 case, the debtors are half right. The automatic stay arising under Bankruptcy Code Section 362(a) is the equivalent of a self-executing court order which takes effect upon the filing of a bankruptcy petition. *In re San Angelo Pro Hockey Club, Inc.*, 292 B.R. 118, 124 (Bankr.N.D.Tex.2003) (*citing Gruntz v. County of Los Angeles*, 202 F.3d 1074, 1082 (9th Cir.2000); *Jove*, 92 F.3d at 1546). The automatic stay provides, in relevant part, that any act to create, perfect, or enforce any lien against property of the debtor to the extent that such a lien secures a pre-petition claim is prohibited. 11 U.S.C. § 362(a)(5).

■ On request of a party in interest, however, a bankruptcy court can condition or terminate the automatic stay for cause pursuant to Bankruptcy Code Section 362(d). The IRS made no such request here. Nor did the IRS seek this court's approval to refile or reinstate its extinguished tax lien against the debtors' home as a secured claim. Rather, the IRS simply asserted the released tax lien as a secured claim in the debtors' Chapter 13 case after the lien was extinguished. The

---

7.  On Claim 7, the IRS checked a box indicating that its claim was secured by a motor vehicle in addition to the debtors' real estate; however, this appears to have been done in error as no further information, such as a specific vehicle identification number, relating to any such lien was included.

debtors are correct that Section 362(a)(5) prevents this action absent court approval.

■ The debtors' argument that their Chapter 7 discharge also prohibits the IRS from reinstating its secured claim against their home is a little more difficult. Debtors are permitted to file a Chapter 13 subsequent to filing a Chapter 7. *Johnson v. Home State Bank*, 501 U.S. 78, 111 S.Ct. 2150, 115 L.Ed.2d 66 (1991) ("Congress did not intend categorically to foreclose the benefit of Chapter 13 reorganization to a debtor who previously has filed for Chapter 7 relief.") (*In re Saylors*, 869 F.2d 1434, 11th Cir.1989). However, "[n]othing in the Bankruptcy Code or case law... provides a debtor the right to receive two discharges in a single case." *In re Hauswirth*, 242 B.R. 95, 97 (Bankr.N.D.Ga. 1999). Here, the debtors did not file a new Chapter 13 case after the completion of their Chapter 7 case; rather, they converted a case initially filed as a Chapter 7 case to a Chapter 13 case after receiving a Chapter 7 discharge. The debtors are not entitled to receive two discharges in this single bankruptcy case.

Given that the debtors are not entitled to receive more than one discharge per case, the court shall vacate the debtors' discharge (Doc. No. 31). The debtors can remain in their Chapter 13 case and receive a Chapter 13 discharge after they complete payments under a confirmed plan. *Hauswirth*, 242 B.R. at 97 ("the inconsistency of allowing a debtor two discharges in one case may be avoided by vacating a debtor's Chapter 7 discharge"). Because no discharge will survive in this Chapter 13 case (until all plan payments are made), the discharge really is not a factor in resolving the status of the IRS claim.[8]

In conclusion, the IRS made a decision to release a lien that need not have been released. The lien was extinguished. The automatic stay bars any post-petition attempt by the IRS to reinstate its lien against the debtors' home. Nor can the IRS rely on its secured status as of the petition date to resurrect its lien. The claim is unsecured.

The IRS elected a course of action and must abide by the consequences. If the IRS automatically generates a Certificate of Release of Lien each time it receives notice that a taxpayer has filed a Chapter 7 case, such action is unwarranted. The IRS would do well to reconsider this policy as it is not mandated by the Bankruptcy Code nor is it required by the Internal Revenue Code statutes examined herein. The debtors' Objection is sustained. A separate order consistent with this ruling shall be entered.

8. Alternatively, if desired, the debtors can retain their Chapter 7 discharge and waive their Chapter 13 discharge, 11 U.S.C. 1328(a), or retain their Chapter 7 discharge by filing a motion to reconvert their case to a Chapter 7 case. The court will give the debtors 15 days to elect either of these options by filing an appropriate motion. However, because these two alternatives appear disadvantageous to the debtors, the court assumes the debtors will elect to have the existing discharge vacated and await entry of their Chapter 13 discharge.