**In re Clarence L. WRIGHT, Debtor.**

**Clarence L. WRIGHT, Movant,**

v.

**TRANSAMERICA FINANCIAL SERVICES, INC.,**
**Respondent.**

**Bankruptcy No. 91–11576.**

United States Bankruptcy Court,
S.D. Georgia,
Augusta Division.

March 12, 1992.

John B. Long, Dye, Tucker, Everitt, Wheale & Long, Augusta, Ga., for debtor/movant.

W. Rhett Tanner, Jones, Day, Reavis & Pogue, Atlanta, Ga., for respondent.

## ORDER

JOHN S. DALIS, Bankruptcy Judge.

Debtor, Clarence L. Wright, objects to the proof of claim filed by Transamerica Financial Services, Inc. ("Transamerica"). Based on the evidence presented at hearing and relevant legal authorities, I make the following findings.

## FINDINGS OF FACT

On July 22, 1986 Transamerica loaned debtor Nine Thousand Nine Hundred Seventy–Seven and 10/100 ($9,977.10) Dollars. The loan documentation indicates that the face amount of the loan, Nine Thousand Nine Hundred Seventy–Seven and 10/100 ($9,977.10) Dollars, includes an "amount financed" of Nine Thousand Four Hundred Seventy–Eight and 39/100 ($9,478.39) Dollars and a "Prepaid Finance Charge (Loan Fee)" (the "loan fee") of Four Hundred Ninety–Eight and 71/100 ($498.71) Dollars.[1] Under the terms of the loan agreement, debtor was to repay the loan in 59 monthly installments of Two Hundred Fifty–Six and No/100 ($256.00) Dollars and one installment of Two Hundred Eighty–Nine and 22/100 ($289.22) Dollars, with interest at the rate of 18.5 percent per annum.

On September 26, 1988 Transamerica made a second loan to debtor. The face amount of the second loan was Twenty–Three Thousand One Hundred Sixty–Two and 36/100 ($23,162.36) Dollars, which included a refinancing of Six Thousand Four Hundred Thirty–Six and 95/100 ($6,436.95) of the first loan. The loan agreement[2] executed in connection with the second loan indicates that the face amount of the loan, Twenty–Three Thousand One Hundred Sixty–Two and 36/100 ($23,162.36) Dollars, includes an "amount financed" of Twenty–One Thousand Five Hundred Forty–One and No/100 ($21,541.00) Dollars and a loan fee of One Thousand Six Hundred Twenty–One and 36/100 ($1,621.36) Dollars. Under the second loan agreement, the loan was to be repaid in 120 monthly installments of Three Hundred Eighty–Eight and No/100 ($388.00) Dollars, with interest at the rate of 16 percent per annum.

Each loan agreement also provided in part as follows:

FOR VALUE RECEIVED I promise to pay you the Total Amount of Loan (Amount Financed plus Prepaid Finance Charge) and Interest Charges computed at the Agreed Rate of Charge shown above, payable in the monthly instalment amounts and on the dates, all as shown above.

. . . .

PREPAYMENT: If an amount exceeding 20% of the Total Amount of Loan (Amount Financed plus Prepaid Finance Charge) is prepaid in any 12 month period, within 5 years of the date of this loan, I will pay a prepayment penalty equal to six (6) months interest at the Agreed Rate of Charge on the amount prepaid which is in excess of 20% of the original Total Amount of Loan. *I agree to pay the above Prepaid Finance Charge [loan fee], which is not subject to rebate in the event of prepayment in full.*

(Emphasis added).

On August 30, 1991 debtor filed for protection under Chapter 13 of the Bankruptcy Code. Transamerica filed a proof of claim in the amount of Eighteen Thousand Five Hundred Forty–Eight and 51/100 ($18,548.51) Dollars, the outstanding balance on the second loan. Debtor objects to Transamerica's proof of claim contending that both of the above described loans violate Georgia's criminal usury statute, Official Code of Georgia Annotated (O.C.G.A.) § 7–4–18, and, therefore, that Transamerica forfeits all interest charged on each loan

---

1. The loan documentation includes a "Security Agreement and Promissory Note" and a "Disclosure Statement," which will be referred to in this order collectively as the "loan agreement."

2. The loan agreement for the second loan comprises the same form documents described in note 1. I will generally refer to the loan documentation for both loans as "loan agreements."

and must reduce its proof of claim accordingly.

## CONCLUSIONS OF LAW

O.C.G.A. § 7–4–18(a) provides in pertinent part as follows: "Any person, company, or corporation who shall ... charge ... any rate of interest greater than 5 percent per month, either directly or indirectly, by way of ... any contract, contrivance, or device whatsoever shall be guilty...." Debtor does not contend the average monthly interest charges on either loan exceed five (5%) percent. Debtor argues that the nonrebatable loan fees constitute "interest" under O.C.G.A. § 7–4–18 applicable exclusively to the first month of the respective loans, resulting in an interest charge in the first month of each loan greater than five (5%) percent in violation of O.C.G.A. § 7–4–18. Debtor relies on two decisions of this court, *In re Evans*, 130 B.R. 357 (Bankr.S.D.Ga.1991) and *In re Dent*, 130 B.R. 623 (Bankr.S.D.Ga.1991), in which I had occasion to address the same issue presented here: whether under O.C.G.A. § 7–4–18 a nonrebatable loan fee, or similar charge, is interest applicable exclusively to the period from the date of the execution of the loan to the date the first payment is due. In *Evans*, relying on the decision of the Honorable Dudley H. Bowen, Jr., district court judge of this district, *Moore v. Comfed Sav. Bank*, 777 F.Supp. 960 (S.D.Ga.1991), I determined that under Georgia law,

> [w]here the loan terms include an additional interest charge as defined under O.C.G.A. § 7–4–18 which attaches upon the signing of the note and is nonrebatable upon early pay off or default, the analysis [for determining whether the loan violates O.C.G.A. § 7–4–18] is not on a per annum basis; rather, the analysis is monthly to determine *whether in any given month,* the interest charged exceeds five (5%) percent.

*Evans, supra,* at 360–61 (emphasis added). *Accord Dent, supra,* at 626.

Although Transamerica contends that classification of the loan fees as "interest" within the meaning of O.C.G.A. § 7–4–18 is "subject to challenge" (Transamerica's brief, at p. 3), the "Prepaid Finance Charge (Loan Fee)" charged debtor for each loan "is exactly what it says, a finance charge, a charge to the borrower for use of the lender's money, payable at the origination of the loan." *Evans, supra,* at 360. In Georgia, "a lender's charge for service, when no service was in fact rendered or to be rendered the borrower, is a charge for the use of the money advanced and is therefore interest." *First Federal Sav. & Loan Ass'n v. Norwood Realty Co.,* 212 Ga. 524, 531, 93 S.E.2d 763, 768 (1956). Each loan agreement in this case provides that the "finance charge" includes the loan fee. *Cf. Dent, supra,* at 627. I find the loan fees are "interest" within the meaning of O.C.G.A. § 7–4–18.

Transamerica argues that even if the loan fees constitute "interest" under O.C.G.A. § 7–4–18, neither loan violates O.C.G.A. § 7–4–18 because when the loan fees are spread over the life of the respective loans, as Transamerica contends they must be, the average monthly interest rate charged on each loan is less than five (5%) percent. Transamerica contends that *Evans* and *Dent,* as well as Judge Bowen's decision in *Comfed,* are inconsistent with Georgia case law and therefore should not be followed. Specifically, Transamerica cites *Norris v. Sigler Daisy Corp.,* 260 Ga. 271, 392 S.E.2d 242 (1990), *Scheil v. Georgia Fed. Sav. & Loan Ass'n,* 154 Ga.App. 714, 269 S.E.2d 881 (1980), and *Adamson v. Lilienthal,* 77 Ga.App. 392, 48 S.E.2d 579 (1948) in support of its argument that contrary to *Comfed, Evans* and *Dent,* where a loan agreement provides that a loan fee will be paid over the life of the loan, as do the loan agreements in this case, the loan fee must be amortized over the life of the loan for the purpose of determining whether the loan is usurious under O.C.G.A. § 7–4–18.

Transamerica's reliance on *Norris, Scheil* and *Adamson* is misplaced as none of those cases involved the issue presented in this case. In fact, only *Norris* even concerns O.C.G.A. § 7–4–18. *Scheil* and *Adamson* involve repealed civil usury statutes. The issues in *Norris* were whether

Georgia's criminal usury statute, O.C.G.A. § 7–4–18, applies in a civil action and whether the loan fee (labeled an "origination fee" in *Norris*) charged by the lender was "interest" under O.C.G.A. § 7–4–18. *Norris, supra,* 392 S.E.2d at 242. The Georgia Supreme Court held that O.C.G.A. § 7–4–18 applies to civil actions and the loan fee was "interest" within the meaning of O.C.G.A. § 7–4–18. *Id.* at 243. In *Norris* the court also formulated a method of computing the rate of interest charged on a loan for purposes of O.C.G.A. § 7–4–18, which was followed in *Evans, supra,* at 359 and *Dent, supra,* at 627. As explained in *Evans,* however, in *Norris* the Georgia Supreme Court did not address the issue of whether a nonrebatable loan fee is interest applicable exclusively to the first payment period of the loan "[b]ecause the figures in *Norris* were such that the rate of interest exceeded five percent per month even when amortized over the life of the loan...." *Evans, supra,* at 359.

The issue in *Scheil* was whether under O.C.G.A. § 7–4–3(c)(7) (1980) (repealed),[3] Georgia's former civil usury statute applicable to real estate loans, a loan fee (an "origination fee" and "discount points" in *Scheil*) should be deducted from or included in the "principal" when computing interest for the purpose of ascertaining compliance with that statute. *Scheil, supra,* 269 S.E.2d at 882. The Georgia Court of Ap-

peals held that a loan fee is included in the "principal" on which interest was calculated under O.C.G.A. § .7–4–3(c)(7).[4] *Scheil, supra,* at 883. In passing on this issue and relying on the language of O.C.G.A. § 7–4–3(c)(7) (see note 3), the Georgia Court of Appeals also stated "[t]hough a portion of the amount borrowed went immediately to pay certain costs (deemed interest), which costs effectively reduced plaintiffs' cash receipt from the loan, such interest is spread over the term of the loan...." *Id.* The court's statement in *Scheil* that a loan fee "is spread over the term of the loan" was in reliance on the specific provisions of a civil usury statute that is no longer Georgia law (see note 3) and is therefore inapplicable to the issue in this case. Moreover, even if the statute had not been repealed and read today as it did in 1980, O.C.G.A. § 7–4–18, the statute applicable to the issue before me, unequivocally provides that "[n]othing contained in Code Section 7–4–2 or 7–4–3 shall be construed to amend or modify the provisions of this Code section [§ 7–4–18]." O.C.G.A. § 7–4–18(c).

In *Adamson* the Georgia Court of Appeals addressed the issue of whether under Georgia's civil usury statute existing in 1948, O.C.G.A. § 7–4–4 (repealed),[5] a loan not usurious if paid according to the terms of the loan agreement was rendered usurious by early repayment. The court held that a loan *"not usurious in its inception*

---

**3.** O.C.G.A. § 7–4–3(c)(7) (1980) (cited as Code Ann. § 57–101.1(c)(7) in *Scheil*) read as follows:

The rate of interest applicable to a real estate loan shall be computed upon the assumption that the debt will be paid according to the agreed terms and will not be paid before the end of the agreed term. Any sums of money reserved or taken for the loan or forbearance which are in the nature of and taken into account in the calculation of interest, even though paid at one time, shall be spread over the stated term of the loan for the purpose of determining the rate of interest under this section.

Section 7–4–3 was repealed in 1983 by Georgia law 1983, p. 1146, § 2. Current O.C.G.A. § 7–4–3 has no application to this case.

**4.** To the extent the court's holding in *Scheil,* that a loan fee is part of the "principal" for purposes of computing interest under O.C.G.A. § 7–4–3(c)(7) (1980), has any bearing on application of O.C.G.A. § 7–4–18 to the facts in this case, *Scheil*

is overruled by *Norris, supra,* 392 S.E.2d at 243–44, where the Georgia Supreme Court did not include the loan fee in the "principal" on which interest calculations were based.

**5.** O.C.G.A. § 7–4–4 (Code 1933, as amended by laws 1937, p. 463, cited as Code Ann. § 57–116 in *Adamson*) provided in pertinent part:

Any person, natural or artificial, in this State, lending money to be paid back in monthly, quarterly, or yearly installments, may charge interest thereon at six percent, per annum or less for the entire period of the loan, aggregating the principal and interest for the entire period of the loan, and dividing the same into monthly, quarterly or yearly installments ... and the same shall be valid for the amount of the principal and interest charged; and such contract shall not be held usurious.

Ga.L.1983, p. 1146, § 3 repealed former § 7–4–4 and enacted present § 7–4–4, which is not applicable to this case.

... was not rendered usurious by the voluntary payment of the principal and interest in advance of the maturity dates...." *Adamson, supra,* 48 S.E.2d at 580 (emphasis added). This application of Georgia's former civil usury statute does not concern the issue before me, whether under O.C.G.A. § 7–4–18, Georgia's current criminal usury statute, a nonrebatable loan fee is interest applicable exclusively to the first repayment period of the loan. Even were *Adamson* instructive on the issue presented in this case, under *Adamson,* Transamerica's loans to debtor are usurious even if paid according to the terms of the loan agreements if the loans are usurious at inception as a result of the nonrebatable loan fees. *See Adamson, supra,* at 580.

Contrary to Transamerica's argument, purportedly supported by these Georgia cases, it is not how or when a borrower repays additional interest charges incurred by the borrower at the loan's inception that determines whether such charges apply to the first payment period or are spread over the life of the loan. Rather, it is the repayment period in which the lender *earned* the interest that determines the period to which the interest applies. *Comfed, supra,* at 961; *Evans, supra,* at 360; *Dent, supra* at 627. Because the loan fees in this case "attach[ed] upon the signing of the [loan agreements] and [were] nonrebatable upon early payoff," *Evans, supra,* at 360, the loan fees, "interest" under O.C.G.A. § 7–4–18, were earned in the first month of the respective loans. *Id.* The fact that the loan fees were scheduled to be repaid over the life of each loan does not alter the fact that the loan fees were earned at the moment the loan agreements were executed.

In computing the interest rate on a loan, for purposes of O.C.G.A. § 7–4–18, it must be determined whether *"in any given month,* the interest charged exceeds five (5%) percent." *Evans, supra,* at 360–61 (emphasis added). Having found the loan fees in this case constitute interest applicable only to the first month of the respective loans, I must determine for each loan, using the formula prescribed in *Norris,* whether the combination of simple interest charged in the first month of the loan plus the additional interest charge in the first month, the nonrebatable loan fee, results in an interest rate in the first month in excess of five (5%) percent. *Evans, supra,* at 360. If so, the loan is usurious under O.C.G.A. § 7–4–18.

The face amount of the first loan was Nine Thousand Nine Hundred Seventy-Seven and 10/100 ($9,977.10) Dollars. Of that amount Four Hundred Ninety–Eight and 71/100 ($498.71) Dollars was a loan fee, which under *Norris* (see note 4), is considered interest rather than principal. Subtracting the loan fee from the face amount of the loan leaves an amount financed of Nine Thousand Four Hundred Seventy–Eight and 39/100 ($9,478.39) Dollars. The total cost of credit was Five Thousand Nine Hundred Fourteen and 83/100 ($5,914.83) Dollars, the difference between the amount financed, Nine Thousand Four Hundred Seventy–Eight and 39/100 ($9,478.39) Dollars, and the total of payments due under the loan agreement, Fifteen Thousand Three Hundred Ninety–Three and 22/100 ($15,393.22) Dollars. The term of the loan was 60 months, so the amount of simple interest attributable to each month was Ninety–Eight and 58/100 ($98.58) Dollars ($5,914.83 divided by 60 rounded to the nearest cent). The total interest charged in the first month of the loan was Ninety–Eight and 58/100 ($98.58) Dollars, the amount of simple interest per month, plus the loan fee of Four Hundred Ninety–Eight and 71/100 ($498.71) Dollars, totaling Five Hundred Ninety–Seven and 29/100 ($597.29) Dollars. The total interest for the first month of the loan, Five Hundred Ninety–Seven and 29/100 ($597.29) Dollars, divided by the amount financed, Nine Thousand Four Hundred Seventy–Eight and 39/100 ($9,478.39) Dollars, yields an interest rate charged in the first month of the loan of 6.3% percent. Under O.C.G.A. § 7–4–18 the first loan was usurious.

The face amount of the second loan was Twenty–Three Thousand One Hundred Sixty–Two and 36/100 ($23,162.36) Dollars. Of that amount, One Thousand Six Hundred Twenty–One and 36/100 ($1,621.36)

Dollars was a loan fee. Subtracting the loan fee from the principal amount leaves an amount financed of Twenty–One Thousand Five Hundred Forty–One and No/100 ($21,541.00) Dollars. The total cost of credit was Twenty–Five Thousand Nineteen and No/100 ($25,019.00) Dollars, the difference between the amount financed, Twenty–One Thousand Five Hundred Forty–One and No/100 ($21,541.00) Dollars, and the total of payments due under the loan agreement, Forty–Six Thousand Five Hundred Sixty and No/100 ($46,560.00) Dollars. The term of the loan was 120 months. So the amount of simple interest attributable to each month was Two Hundred Eight and 49/100 ($208.49) Dollars ($25,019.00 divided by 120 rounded to the nearest cent). The total interest charged in the first month of the loan was Two Hundred Eight and 49/100 ($208.49) Dollars plus the loan fee of One Thousand Six Hundred Twenty–One and 36/100 ($1,621.36) Dollars, totaling One Thousand Eight Hundred Twenty–Nine and 85/100 ($1,829.85) Dollars. The total interest for the first month of the loan, One Thousand Eight Hundred Twenty–Nine and 85/100 ($1,829.85) Dollars, divided by the amount financed, Twenty–One Thousand Five Hundred Forty–One and No/100 ($21,541.00) Dollars yields an interest rate charged in the first month of the loan of 8.49 percent. Under O.C.G.A. § 7–4–18 the second loan was usurious.

The penalty for violating O.C.G.A. § 7–4–18 is forfeiture of all interest charged on the loan. *Norris, supra,* 392 S.E.2d at 243. In *Evans* and *Dent,* having determined the loans in those cases were usurious, I required the lender in each case to reduce its claim to the amount financed less all payments received under the loan. For charging usurious interest in violation of O.C.G.A. § 7–4–18, Transamerica should be required to amend its proof of claim to reflect only the amount financed on each loan less all payments received on each loan. *See, e.g., Evans, supra,* at 361; *Dent, supra,* at 630–31. Additionally, because a component of the second loan, Six Thousand Four Hundred Thirty–Six and 95/100 ($6,436.95) Dollars, was a refinancing of the outstanding balance on the first

loan, Transamerica's proof of claim should be reduced further to the extent that payments received on the first loan would have, without interest on the loan, reduced the amount refinanced in the second loan.

Unfortunately, the latest expression of the district court on this issue is to the contrary. *See Johnson v. Fleet Finance, Inc.,* 785 F.Supp. 1003 (S.D.Ga.1992) (Edenfield, C.J.). In *Johnson,* the Honorable B. Avant Edenfield, chief district court judge in the Southern District of Georgia, expressly disagreed with my rationale in *Evans* and *Dent,* and with Judge Bowen's decision in *Comfed,* holding that "Georgia's criminal usury statute [O.C.G.A. § 7–4–18] is violated only if a lender charges more than five (5%) percent interest per month, *as calculated by amortizing all interest charges over the potential life of the loan.*" *Johnson, supra,* at 1010 (emphasis added). Judge Edenfield reasons that by using the phrase "per month" in O.C.G.A. § 7–4–18, "the Georgia legislature unambiguously declared that usury is measured by determining what interest rate is charged, *on average,* in a month. To assume that a loan is usurious because more than five (5%) percent is charged during the first month is akin to assuming that the marathon runner who runs the first mile in five minutes will run the entire marathon at that pace." *Id.* I respectfully disagree with Judge Edenfield's analysis. I do not agree that "per month" implies a monthly average. Had the Georgia legislature intended that a monthly average be implemented for purposes of O.C.G.A. § 7–4–18 it could have easily said so. The Georgia legislature, in my reading of O.C.G.A. § 7–4–18, requires that a criminal usury analysis be on a "per month" basis. To borrow Judge Edenfield's analogy, the fact that a marathon runner who completes the first mile of the race in five minutes cannot be assumed to run the entire race at that pace does not change the fact that the first mile was completed in five minutes. In this case, the fact that the average monthly rate of interest charged on each loan, taking the aggregate of all interest charges over the life of the loan and dividing by the

number of months in the loan term, is less than five (5%) percent, does not change the fact that in the first month Transamerica earned interest exceeding five (5%) percent. In my view, computing interest under O.C.G.A. § 7–4–18 in accordance with *Johnson* renders the phrase "per month" in O.C.G.A. § 7–4–18 meaningless.

 In light of the *Comfed* and *Johnson* decisions, I am confronted with the unusual situation of conflicting district court authority. The bankruptcy court, a unit of the district court, 28 U.S.C. § 151, is bound by the decisions of the district court. *In re Whitehorn,* 99 B.R. 734, 736 (Bankr. N.D.Tex.1989); *In re Moisson,* 51 B.R. 227, 229 (Bankr.E.D.Mich.1985); *Eaton Land & Cattle v. Rocky Mt. Investments,* 28 B.R. 890, 892 (Bankr.D.Colo.1983); *contra In re Gaylor,* 123 B.R. 236, 241–43 (Bankr. E.D.Mich.1991); *In re Rheuban,* 128 B.R. 551, 554–55 (Bankr.C.D.Cal.1991). Where there are conflicting decisions by two district court judges of the same district, the bankruptcy court may be free to follow either decision. *See, In re Morningstar Enterprises, Inc.,* 128 B.R. 102, 106 n. 1 (Bankr.E.D.Pa.1991). However, where the most recent expression of the law by the district court specifically overrules a prior decision of a bankruptcy court within the district, *Johnson, supra,* at 1008–10, the bankruptcy court is bound by that district court decision. Although I respectfully disagree with the rationale of *Johnson,* I am bound to follow it.

It is therefore ORDERED that debtor's objection to the claim of Transamerica is overruled.