UNITED STATES of America, Plaintiff,

v.

Kenneth H. WINCHELL, Alta Vista Trust Organization, Davis, Graham & Stubbs, John F. and Elizabeth R. Malo, Theodore Zigan, Ronald K. Blatchley, William M. Blatchley, Park County, Colorado, Colorado National Bankshares, Inc., Adams County District Court, Arthur D. McFall, Carpenter & Klatskin, P.C., Meridian Properties, Jack W. Baker, Boettcher & Company, James P. Campbell, Adams County, Colorado, Rite–Form Concrete, Inc. d/b/a Zigan Sand & Gravel, Inc., Ken Stustrich d/b/a Rocky Mountain Crane Services, Mineral Deposits (Americas) Ltd., Petroleum Inc., Krueger Construction Co., Salt Cay Distributors, London International, Kokanee Corporation, Larson Land Co., Frieco, Uninc., Taraco, Uninc., Union National Bank and Trust of Souderton, E.H. Gifford, M & M Mining Co., Inc., Defendants.

Civ. A. No. 89–B–1317.

United States District Court,
D. Colorado.

June 26, 1992.

William G. Pharo, Asst. U.S. Atty., Denver, Colo., Justin L. Garrett II, Trial Atty., Tax Div., U.S. Dept. of Justice, Washington, D.C., for U.S.

Kenneth H. Winchell, pro se.

Michael W. Sutherland, Law Offices of Robert A. Weinberger, P.C., Denver, Colo., for Zigan & Rite–Form.

Jon F. Sands, Bostrom & Sands, P.C., James J. Dufficy, Denver, Colo., for M & M Mining/Union Nat. Bank.

Gale T. Miller, Randall Weeks, Jeffrey R. Pilkington, Davis, Graham & Stubbs, Denver, Colo., for Colorado Nat. Bankshares, Inc., Malo, Boettcher & Davis, Graham.

Larry M. Snyder, Pepper and Rubin, P.C., Denver, Colo., for Blatchleys.

Max A. Minnig, Jr., Willis Carpenter, Carpenter & Klatskin, P.C., Denver, Colo., for Carpenter & Klatskin.

Rick G. Davis, Davis & Ceriani, P.C., Denver, Colo., for Arthur McFall.

Earl H. Johnson, Denver, Colo., for Larson Land.

## MEMORANDUM OPINION AND ORDER

BABCOCK, District Judge.

Defendants M & M Mining Co., Union National Bank of Souderton, and Arthur McFall (collectively the "owners") move for summary judgment against the United States, contending as a matter of law that their interest in the real property at issue here is superior to the tax lien claimed by the United States. Jurisdiction exists pursuant to 28 U.S.C. §§ 1340 and 1345, and 26 U.S.C. § 7402. The issue is adequately briefed and oral argument will not materially aid its resolution. The parties agree that there are no material facts in dispute that would preclude summary judgment.

As a matter of law, when the United States released its tax lien on the subject property, the owners' interest in that property became superior to that of the United States. Therefore, the owners' motion is granted.

The facts material to the United States' foreclosure action against the owners are not in dispute. On August 18, 1983, the United States, through the Internal Revenue Service (IRS), assessed more than $400,000 in back taxes against defendant Kenneth Winchell. On April 10, 1984, pursuant to 26 U.S.C. §§ 6321 and 6323, the United States filed a notice of tax lien in the Park County clerk and recorder's office against any real property owned by Winchell in that county. In 1986, defendant Theodore Zigan brought suit against Winchell and took title to the subject property through a judicial sale and execution on his money judgment. On November 9, 1987, the IRS served a levy and notice of seizure on Zigan, purportedly in an attempt to sell the property to satisfy the assessment against Winchell. However, the IRS took no steps to complete the levy and seizure proceedings.

The owners purchased the subject property from Zigan on June 28, 1989. The United States brought this action on August 3, 1989 and amended its complaint in June, 1990 to state a foreclosure claim against the owners. The United States refiled the notice of tax lien on September 7, 1989 and filed a lis pendens on September 12, 1989. Then, on November 28, 1989, the IRS filed with the Park County clerk and recorder's office a certificate of release of its tax lien against Winchell. The government admits that the it issued the certificate in error. On December 8, 1989, the IRS filed a revocation of that release. The owners now move for summary judgment on the United States' foreclosure claim, arguing that their interests in the subject property became superior to the United States' tax lien by virtue of the November 28, 1989 release. I agree.

■ Section 6321 of the Internal Revenue Code (26 U.S.C. § 6321) provides that if any persons fails to pay a tax assessment

then that amount shall automatically be a lien on all property belonging to that person. However, where real property is concerned, section 6323 provides that the lien shall not be valid as against any person who holds an interest in the affected property until the IRS records a notice of tax lien. Section 6322 provides that such notice shall be effective for six years (now ten years), but the notice can be refiled to extend that period. Here, Winchell owned the subject property on April 10, 1984 when the IRS filed its notice of tax lien. Therefore, as of that date, the tax lien had priority over all subsequently acquired interests in that land.

■ Section 6325 provides that the IRS may issue a certificate of release of tax lien in certain circumstances. Section 6325(f)(1) states:

Except as provided in paragraphs (2) and (3), if a certificate is issued pursuant to this section by the Secretary and is filed in the same office as the notice of lien to which it relates (if such notice has been filed) such certificate shall have the following effect:

(A) in the case of a certificate of release, such certificate *shall be conclusive that the lien referred to in such certificate is extinguished.* (Emphasis added).

Under this section, unless an exception applies, the certificate of release issued and recorded by the IRS is conclusive proof that the United States' tax lien is extinguished and, therefore, the government's foreclosure claim against the owners must fail. *See, Freitag v. The Strand of Atlantic City,* 205 F.2d 778, 781 (3rd Cir.1953), ("[T]his peremptory and sweeping statutory language can be avoided only by showing of actual fraud in the procurement of the discharge").

■ Section 6325(f)(2), the only applicable statutory exception, sets out a procedure for revoking a certificate of release that was issued erroneously or improvidently. As all parties agree, this exception applies here because the IRS issued the release in error. A release may be revoked and the underlying tax lien reinstated under this sub-section if the IRS (A) mails notice to the taxpayer, and (B) files notice of such revocation in the same office where the notice of tax lien was originally filed. However, a notice of revocation does not reinstate the prior lien retroactively. Rather, the priority of the United States' lien dates from the filing of the revocation.

Such reinstated lien (i) shall be effective on the date notice of revocation is mailed to the taxpayer in accordance with the provisions of sub-paragraph (A), but not earlier than the date on which any required filing of notice of revocation is filed in accordance with the provisions of sub-paragraph (B), and (ii) shall have the same force and effect (*as of that date*), until the expiration of the limitation period on collection after assessment, as a lien imposed by section 6321 (relating to lien for taxes).

Section 6325(f)(2) (emphasis added).

The IRS' own regulations make this result even clearer. 26 C.F.R. § 301.-63251(f)(2)(iii)(b) provides: "The reinstatement of the lien does not retroactively reinstate a previously filed notice of lien. The reinstated lien is not valid against any holder of a lien or interest ... until notice of the reinstated lien has been filed...." The regulation goes on to provide an illustrative example of how the reinstatement process affects priority of the tax lien.

Example. On March 1, 1967, an assessment of an unpaid Federal tax liability is made against A. On March 1, 1968, notice of the Federal tax lien, which arose at the time of assessment, is filed. On April 1, 1968, A executes a bona fide mortgage on property belonging to him to B. On May 1, 1968, a certificate of release of the tax lien is erroneously issued and is filed by A in the same office in which the notice of lien was filed. On June 3, 1968, the lien is reinstated in accordance with the provisions of this subparagraph. On July 1, 1968, A executes a bona fide mortgage on property belonging to him to C. On August 1, 1968, a notice of the lien which was reinstated is properly filed in accordance with the provisions of § 301.-6325(f)-1. The mortgages of both B and

C will have priority over the rights of the United States with respect to the tax liability in question.

26 C.F.R. § 301.6325–1(f)(2)(iv).

These statutory and regulatory provisions are clear and unambiguous, and must be enforced as written. Indeed, Congress addressed the precise factual scenario present here (an erroneous release) and directed that a reinstated lien has priority only from the date of its filing. Moreover, the example contained in the IRS' own regulations is on all fours with the facts of this case. Here, the IRS assessed an unpaid tax liability against Winchell, and then recorded a notice of tax lien. Winchell's property passed to Zigan by way of judicial sale, and Zigan then sold the property to the owners. After the owners acquired their interest, the IRS erroneously issued and filed a certificate of release that conclusively extinguished the tax lien. Then, the IRS filed a revocation of that release and reinstated the lien. Just like "B" above, who acquired his interest before the filing of the erroneous release, the owners' interest in the subject property now has priority over the rights of the United States with respect to Winchell's tax liability. *Cf., United States v. Levasseur,* 81–1 U.S.T.C. (CCH) P9116 (D.Vt.1980), (Where tax lien was erroneously released and then reinstated, third party's previously acquired interest in the subject property defeated only because he did not perfect that interest under state law. Court implicitly assumed that, otherwise, the third party's interest would be prior to tax lien).

Nevertheless, in an attempt to escape the clear language of its own code and regulations, the IRS advances five arguments to preserve the priority of its reinstated lien. None of these arguments have merit.

First, the government argues that the filing of this action tolled the period in which it could collect the assessment from Winchell. Although this is a correct statement of the law, it is irrelevant to the question presented in this motion. The issue here is not whether the collection period has run, but whether the release and subsequent reinstatement of the lien defeats the owners' priority over the tax lien.

■ Second, the government argues that the filing of this action extended the life of the first notice of tax lien beyond the six year span provided for by statute. Again, this argument is irrelevant and it begs the question. The life of the first notice of tax lien might have been extended by the filing of this action, but it's life was conclusively terminated when the IRS issued the certificate of release.

Third, the government contends that the respective rights of the parties to this property were frozen when I acquired *in rem* jurisdiction over the property and when the government recorded a lis pendens. Of course, the owners are not disputing my jurisdiction. Indeed, their motion depends on my having jurisdiction to adjudicate whether the United States' tax lien is senior or junior to their interests. Further, the government cites no authority for the novel proposition that the rights of party litigants are frozen as of the date of the complaint.

■ Nor does a lis pendens freeze the respective rights of litigants in an action affecting real property. "The purpose of recording a lis pendens is to give notice of the pendency of an action concerning real property to persons who may subsequently seek to acquire rights in that property." *Maddalone v. Wilson,* 764 P.2d 403, 405 (Colo.App.1988). Here, the owners had already acquired their interest in this property before the lis pendens was recorded. Indeed, Colo.R.Civ.P. 105(f)(3) specifically provides: "Nothing in this Rule 105(f) shall be construed so as to preclude any party litigant from disclaiming any interest in all or any part of the property affected by such notice of lis pendens...." Thus, neither the filing of this action nor the recording of the lis pendens prevented the United States from releasing its own tax lien, thereby losing its priority over the owners' interests.

■ Fourth, the government contends that the certificate of release applied only to the first notice of tax lien and not the

refiling of a second notice on September 8, 1989. However, the government misunderstands what it released. The certificate released the tax lien that was imposed on Winchell's property automatically when the IRS made the original assessment. The release is not tied to a specific notice of tax lien but rather goes to the underlying lien itself. Indeed, the certificate of release itself states that "the lien provided by Code section 6321 ... has been released." Moreover, even if a certificate of release is tied to a notice, both notices filed here clearly relate to the same tax liability and lien. Both notices bear the same reference numbers and serial numbers. The IRS agrees that the refiled notice relates back to the original notice. Thus, the certificate of release here conclusively extinguished the underlying lien itself.

■ Lastly, the government attempts to resurrect its priority by arguing that the levy and notice of seizure served on Zigan in 1987 somehow preserves the priority of its tax lien. The government offers no support for this proposition. Rather, it relies on *American Acceptance Corp. v. Glendora Better Builders*, 550 F.2d 1220, 1223 (9th Cir.1977), for the proposition that the release of a tax lien does not affect the viability of a levy and seizure action. However, this case is not a levy and seizure action. It is an action to foreclose on a tax lien which was extinguished and then reinstated with a priority junior to that of the owners' interest. Thus, the government's attempt to mix apples and oranges fails to avoid the conclusive effect of its certificate of release.

Moreover, the government's argument is an exercise in circular logic and bootstrapping. Section 6331 provides that a levy and seizure can only be brought against property belonging to the taxpayer or property on which there is a tax lien. Thus, the propriety of the levy here depends on the existence of a valid tax lien that is senior to the owners' rights. In essence, the government is attempting to preserve the seniority of its lien by virtue of the pending levy, but the pending levy is in turn wholly dependent on the existence of a senior lien!

Therefore, the United States' tax lien has priority only from December 8, 1989. Because the owners all acquired their interests in the subject property before that date, their interests in that land are superior and prior to any interest of the United States. Moreover, the validity of the United States' lien must also be assessed as of December 8, 1989. *See*, 26 U.S.C. § 6325(f)(2), (Reinstated lien shall have same force and effect as a lien imposed under section 6321). Because Winchell did not own any interest in the subject property on that date, the United States cannot enforce its purported tax lien on that land. *See*, 26 U.S.C. § 6321, (Tax lien only attaches to property belonging to the delinquent taxpayer).

Accordingly, IT IS ORDERED THAT:

(1) Defendants M & M Mining Company, Union National Bank of Souderton, and Arthur McFall's motion for summary judgment is GRANTED;

(2) All claims brought against these defendants by the United States are DISMISSED; and,

(3) Judgment shall enter in favor of these defendants and against the United States.