In re Michael R. DINATALE, Debtor.

Michael R. Dinatale, Plaintiff,

v.

United States of America, Defendant.

Bankruptcy No. 91–4–2648–PM.
Adversary No. 98–1–AP444–PM.

United States Bankruptcy Court,
D. Maryland,
at Greenbelt.

July 1, 1999.

Gregory S. Hrebiniak, Washington, DC, for defendant, United States of America.

Laura J. Margulies, Rockville, MD, for plaintiff, Michael Dinatale.

## AMENDED MEMORANDUM OF DECISION

PAUL MANNES, Chief Judge.

Before the court are cross-motions for summary judgment on Plaintiff's Complaint Seeking Contempt Remedies for Violation of the Automatic Stay and Discharge Injunction. These motions came on for hearing on June 8, 1999. In the Complaint, Michael R. Dinatale (the "Plaintiff" or "Debtor"), alleges that the United States of America, through its agent, the Internal Revenue Service (the "Defendant" or "IRS"), willfully and unlawfully violated the discharge injunction. Plaintiff seeks to recover the amount of $500,000.00 in damages from Defendant and requests that the court find the IRS in civil contempt of court for violating 11 U.S.C. §§ 524(a) and 362(a). Having heard argument of counsel and having reviewed the pleadings and accompanying affidavits and exhibits, the court will for the reasons stated herein grant partial summary judgment in favor of Plaintiff, with respect to the issue of violation of the discharge injunction of § 524(a), deny Defendant's motion for summary judgment, and set a hearing with respect to the issue of damages resulting from the IRS' violation of the discharge injunction. There is nothing in the record to support a ruling that any activity of the Defendant occurring before Debtor's discharge that may have been in violation of the automatic stay of 11 U.S.C. § 362(a).

### FACTS AND BACKGROUND

The following essential facts are not in dispute. Income taxes for the year 1981 were assessed against Debtor on May 31, 1982, and income taxes for the year 1982 were assessed against Debtor on May 23, 1983. The IRS assessed Debtor a sum of approximately $11,000.00 for both years. Defendant filed five Notices of Federal Tax Liens against Debtor in the Circuit Court for Montgomery County, Maryland on February 2, 1983, April 8, 1983, August 8, 1983, July 26, 1984, and April 1, 1991, in the respective amounts of $6,280.72, $5,905.72, $5,664.91, $5,664.91, and $5,670.91.

Debtor filed a case under Chapter 7 on June 3, 1991. On his bankruptcy Schedule A–3, Debtor listed the IRS as an unsecured creditor, scheduling a debt owed to the IRS in the amount of $22,853.19 for income taxes due for 1981 and 1982.[1] On his bankruptcy Schedule B–4, Debtor exempted assets in the amount of $3,695.00, including *inter alia*, $500.00 in deposits. The case was a "no asset" case, resulting in no dividends to creditors. Debtor received a discharge pursuant to 11 U.S.C. § 727 on April 15, 1992. Post-discharge, Debtor terminated his employment with Montgomery County General Hospital, Inc. ("MCGH"). On December 8, 1992, Debtor subsequently received a lump sum distribution from his fully-vested retirement account in the amount of $48,114.60. He used the bulk of those funds to start his own business. Debtor did not schedule his interest in this pension plan as an asset.

Plaintiff points to, *inter alia*, the following specific acts taken in derogation of the discharge injunction. After Debtor contacted an unnamed agent at the IRS to advise of his bankruptcy discharge, on September 26, 1992, the IRS sent a Notice of Levy on MCGH to collect Debtor's tax liability. The IRS collected $840.27 of Debtor's wages after Debtor's exemption of $226.92. Defendant later refunded the amount collected. On November 18, 1992, the IRS issued a Notice of Levy on Debtor's account at Sandy Spring National Bank ("Sandy Spring"), demanding that the bank turn over to the IRS all monies in Debtor's account to pay his tax liability. The IRS later withdrew that levy. On

---

1. On his Schedule A–3, Debtor asserted that the IRS was "not a priority creditor because the debt is income tax assessed more than three years previously. 11 U.S.C. § 507(a)(7)(A)(i)."

June 20, 1994, the IRS sent Debtor two more Notices of Intent to Levy. On August 27, 1994, the IRS again levied on Debtor's account at Sandy Spring. The IRS received $256.85 as a result of the levy that was later refunded. Finally, the IRS filed another Notice of Federal Tax Lien against Debtor in the Circuit Court for Montgomery County, Maryland on July 24, 1996, in the amount of $2,540.23, presumably to renew one of the older, existing federal tax liens in a reduced amount. The IRS later filed a certificate of release of that lien on September 5, 1996.

Debtor appears to have contacted the IRS on numerous occasions before and after his discharge in bankruptcy, and submitted a number of Offers in Compromise in an attempt to settle his tax obligations for the 1981 and 1982 tax years. The IRS never accepted any of Debtor's offers of compromise.

Debtor's bankruptcy case was reopened on July 31, 1998, to allow Debtor to commence the instant adversary proceeding. Plaintiff filed a complaint against the IRS on August 5, 1998, alleging that the aggregate debt of $22,853.19 for income taxes due for the years 1981 and 1982 fell within the scope of his bankruptcy discharge. Plaintiff asserts that, subsequent to his discharge, Defendant wrongfully attempted to collect on the debt through garnishment of his wages and other improper collection efforts. Plaintiff asserts that, as a result of the IRS' unlawful actions, Plaintiff "was forced to terminate his job of 21 years, lost all his future retirement benefits, vacation and sick leave, health insurance and also caused the Plaintiff to suffer extreme mental anguish, a bad credit rat-

ing, stress and health problems, including suffering a heart attack in 1997 and having no health insurance to cover the medical expenses." *Complaint at ¶ 19.* Plaintiff seeks damages in the amount of $500,-000.00 against the IRS for these alleged willful and unlawful violations of the discharge injunction. Plaintiff also sought to hold Defendant in civil contempt of court under 11 U.S.C. § 105(a) for violating 11 U.S.C. §§ 524(a) and 362(a). Defendant responded to the Complaint on September 21, 1998, denying Plaintiff's allegations of willful violations of the discharge injunction and unlawful collection actions contained therein.

Plaintiff filed a Verified Motion for Partial Summary Judgment and a supporting memorandum on April 2, 1999, as well as an additional supplemental memorandum on June 3, 1999, accompanied by affidavits and exhibits. He argues that there is no genuine issue of material fact as to the issue of whether the United States Of America, by its agent, the Internal Revenue Service, violated the discharge injunction and can, therefore, be found in civil contempt of court.

Defendant filed an Opposition to Motion for Summary Judgment and Cross–Motion for Summary Judgment on May 20, 1999, accompanied by an affidavit and exhibits, asserting that the IRS' valid prepetition tax liens survived Debtor's bankruptcy. Defendant argues that the liens attached to all of Debtor's property, including exempt property and to his interest in his pension plan and any proceeds thereof. Defendant also asserts that the applicable statute of limitations for the bringing of this action has expired.[2]

---

**2.** Although Defendant has raised the statute of limitations defense in its opposition and cross-motion, the court directs the government's attention to the analogous case of *Koffman v. Osteoimplant Technology, Inc.*, 182 B.R. 115, 124 (D.Md.1995) (citations omitted), that provides:

> The automatic stay is the central feature of the Bankruptcy Code and works to prevent creditors from taking any further action

against a debtor who has filed for bankruptcy except through the bankruptcy court. In 1984, Congress added subsection 362(h) to the Code to provide an explicit sanction for willful violations of this automatic stay.... Congress did not enact a statute of limitations on actions under section 362(h) and the remedy is available even after the bankruptcy proceedings have terminated.

## STANDARD FOR SUMMARY JUDGMENT

Federal Rule of Civil Procedure 56(c), made applicable to these proceedings by Federal Rule of Bankruptcy Procedure 7056, provides that summary judgment is appropriate only if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *See Lujan v. National Wildlife Federation*, 497 U.S. 871, 883–84, 110 S.Ct. 3177, 111 L.Ed.2d 695 (1990); *Stone v. Liberty Mut. Ins., Co.*, 105 F.3d 188, 190–91 (C.A.4 1997). That standard is applicable even where, as here, both parties have filed cross-motions for summary judgment. *See ITCO Corp. v. Michelin Tire Corp.*, 722 F.2d 42, 45 n. 3 (C.A.4 1983); *Bryant v. Better Business Bureau of Greater Maryland, Inc.*, 923 F.Supp. 720, 729 (D.Md. 1996). "The court must rule on each party's motion on an individual and separate basis, determining, for each side, whether a judgment may be entered in accordance with the Rule 56 standard." 10A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure* § 2720 (3d ed.1998).

Because there are no genuine issues of material fact, the issue before the court is solely a question of law. The underlying, relevant facts being undisputed, the matter may, therefore, be properly decided through the opposing motions for summary judgment.

## ANALYSIS

■ Section 6321 of the Internal Revenue Code provides for the creation of tax liens, stating: "If any person liable to pay any tax neglects or refuses to pay the same after demand, the amount ... shall be a lien in favor of the United States upon all property and rights to property, whether real or personal, belonging to such person." 26 U.S.C. § 6321 (1989). Further, section 6322 of the Internal Revenue Code provides that the tax lien remains in effect until the taxpayer's liability "is satisfied or becomes unenforceable by reason of lapse of time." 26 U.S.C. § 6322 (1989). In the instant case, the IRS is the holder of several properly perfected, prepetition tax liens, having filed notices of federal tax liens in the Circuit Court for Montgomery County. Although the IRS admittedly filed (and later released) a renewal of a prepetition tax lien against Debtor in 1996 to continue its enforceability and avoid lapse, the court finds that such an attempt to revive or renew the existing tax lien on Debtor's property post-discharge does not violate the discharge injunction. *See Matter of McCorkle*, 209 B.R. 773, 776–77 (Bkrtcy.M.D.Ga.1997) (in determining whether tax liens are subject to future renewal, the court held that a post-discharge, governmental attempt to renew tax liens on a chapter 7 debtor's prepetition real property, an in rem action, would not violate the discharge injunction of 11 U.S.C. § 524(a), which only enjoined actions against debtor in personam). *See also In re Larson*, 979 F.2d 625, 627 (C.A.8 1992) (holding that the filing of an addendum to preserve a lien did not create new rights but "simply allow[ed] the holder of a valid lien to maintain the status quo—a policy not adverse to bankruptcy law, but rather in complete harmony with it") (quoting *In re Morton*, 866 F.2d 561, 564 (C.A.2 1989)); *In re Morton*, 866 F.2d 561, 564–65 (C.A.2 1989) (discussing the extension of valid liens as not being in conflict with the Bankruptcy Code).

■ While a creditor is prohibited from collecting debts discharged in bankruptcy under 11 U.S.C. § 524(a), "a bankruptcy discharge extinguishes only one mode of enforcing a claim—namely, an action against the debtor in personam—while leaving intact another—namely, an action against the debtor in rem." *Johnson v. Home State Bank*, 501 U.S. 78, 84, 111 S.Ct. 2150, 115 L.Ed.2d 66 (1991). Valid federal tax liens, therefore, pass

---

The case is stronger for the discharge injunction of § 524(a) that comes into being at the moment of extinction of the automatic stay—the granting of the debtor's discharge.

through bankruptcy unscathed as to a debtor's prepetition property or rights to property. *See Dewsnup v. Timm,* 502 U.S. 410, 417, 112 S.Ct. 773, 116 L.Ed.2d 903 (1992). *See also In re Isom,* 901 F.2d 744, 745–46 (C.A.9 1990) (holding that, under 26 U.S.C. § 6325(a)(1), the IRS was not required to release its liens when the underlying tax debt had been discharged in bankruptcy because "Congress intended for valid tax liens to survive bankruptcy"); *United States v. Alfano,* 34 F.Supp.2d 827, 837 (E.D.N.Y.1999) (a discharge in bankruptcy does not have a devastating impact on a federal tax lien); *In re Deppisch,* 227 B.R. 806, 808 (Bkrtcy.S.D.Ohio 1998) (tax liens are not extinguished by a debtor's discharge); *In re Quillard,* 150 B.R. 291, 295 (Bkrtcy.D.R.I.1993) ("a discharge in bankruptcy does not affect valid pre-bankruptcy liens"); *In re Dillard,* 118 B.R. 89 (Bkrtcy.N.D.Ill.1990) (determining that there is no requirement that the IRS must release its tax lien on a debtor's property even though the underlying tax obligation is discharged in bankruptcy); *In re Leslie,* 103 B.R. 775, 777 (Bkrtcy.S.D.W.Va.1989) ("A lien created before bankruptcy survives bankruptcy even though the underlying debt was discharged in bankruptcy, if the lien is not avoided."). Similarly, here, the IRS' valid tax liens survived Debtor's discharge in bankruptcy. Accordingly, the tax liens may be enforced to collect Debtor's liability for the amounts assessed even though the underlying tax debt was discharged in the Chapter 7 case.

■ Upon filing its notice of tax liens with the Montgomery County Circuit Court, the IRS acquired a perfected security interest in all of Debtor's prepetition property, whether or not exempt, including his pension plan. This is so because the language of section 6321 of the Internal Revenue Code "is broad and reveals on its face that Congress meant to reach every interest in property that a taxpayer might have." *United States v. National Bank of Commerce,* 472 U.S. 713, 720–21, 105 S.Ct.

2919, 86 L.Ed.2d 565 (1985); *see* 26 U.S.C. § 6321.

■■ With respect to Debtor's exemptions, generally property that a debtor has exempted from his or her bankruptcy estate remains subject to valid government tax liens. *See In re DeMarah,* 62 F.3d 1248, 1251 (C.A.9 1995). *See also United States v. Uria,* 180 B.R. 688, 694 (S.D.Fla. 1995) ("[E]ven though a debtor's tax liability is dischargeable, the related federal tax liens for those years remain enforceable against the exempt assets of a debtor's estate."). Although section 522 of the Bankruptcy Code allows debtors to exempt stated property from the bankruptcy estate so that they might enjoy a fresh start, 11 U.S.C. § 522(c)(2)(B), however, also provides for the survival of tax liens on property exempted. *See In re Walkup,* 183 B.R. 884, 888 (Bkrtcy.E.D.Cal.1995); *In re McCullough,* 122 B.R. 251, 252 (Bkrtcy.W.D.Pa.1990). The federal tax liens, therefore, could properly attach to Debtor's bank accounts and other exempt assets.

■ Moreover, federal tax liens may attach to a debtor's pension plan as well. *See, e.g., In re Wesche,* 193 B.R. 76 (BC M.D.Fla.1996) (holding that a federal tax lien attached to a taxpayer's then-existing right to receive property in the future, and thus permitting attachment of the lien to the debtor's post-petition pension payments). Plaintiff has not alleged that his fully-vested retirement plan is otherwise exempt from levy under 26 U.S.C. § 6334. The prepetition federal tax liens, therefore, properly attached to Plaintiff's prepetition, vested interest in his pension plan with MCGH. Further, any proceeds of the property attached prepetition could be properly levied upon by the IRS.

■ Although Plaintiff relies on this court's unpublished decision of *In re Taylor,* No. 90–4–3273–PM, 1991 WL 185110 (Bkrtcy.Md.May 14,1991), for the proposition that a qualified retirement account was not subject to a tax lien unless the

IRS had levied upon the account before the petition was filed, the *Taylor* decision was in error. This court has since declined to follow that decision in *In re Hartso*, No. 97-2-0815-DK, 1998 WL 419578 (Bkrtcy.Md. Apr. 15, 1998). There, the court adopted the reasoning set forth in Judge Teel's decision in *In re Jones*, 206 B.R. 614, 621-22 (Bkrtcy.D.D.C.1997), which held that the pre-petition levy or judgment was not required before retirement plans could be subject to lien attachment by the IRS. In effect, Defendant was entitled to chase the proceeds of Plaintiff's pension distribution.

Finally, although Plaintiff contends that the IRS' attempts to contact the Plaintiff through letters such as Notices of Intent to Levy constituted violations of the discharge injunction as well, the court finds that, by law, the IRS would necessarily have to inform the Plaintiff of any impending actions to attach his property, and therefore, no such violation occurred. Section 6331(d)(1) of Title 26 of the United States Code provides that the government can effect a seizure of property subject to a tax lien "only after the Secretary has notified such person in writing of his intention to make such levy." 26 U.S.C. § 6331(d)(1) (1998). Logic dictates that if the government may effect a seizure of property, it may also take those prerequisite steps to make a proper seizure.

Now that the court has recited what the IRS can do lawfully, the court must address what actions the IRS cannot properly take. The court agrees with Debtor's contention that the IRS improperly attempted to collect on Debtor's wages postpetition. The majority of cases and authorities hold that tax liens do not attach to property acquired postpetition, including wages, which constitute property of the debtor. *See, e.g., Matter of Hellums*, 772 F.2d 379 (C.A.7 1985) (postpetition wages are not the property of a Chapter 7 estate ); *In re Braddy*, 226 B.R. 479 (Bkrtcy.N.D.Fla.1998) (same); *In re Meade*, 84 B.R. 106 (Bkrtcy.S.D.Ohio 1988)

(same). *See also* Internal Revenue Manual § 57(13)3.17(3) (November 17, 1992) ("Tax liabilities not extinguished by a discharge may be satisfied from exempt, abandoned, or after-acquired property. Tax liabilities secured by a recorded lien notice, but discharged in bankruptcy are collectible only from exempt or abandoned property."). Further, the IRS conceded at the hearing held before this court on June 8, 1999, that it was improper to garnish Plaintiff's wages. The court finds, therefore, that the IRS violated 11 U.S.C. § 524(a) by the garnishment. The court is mindful of the fact that Plaintiff was not required to initiate this action to obtain the release of the garnished funds. Nonetheless, the IRS wrongfully attempted to satisfy its debt by attachment of Plaintiff's salary, and that singular act was in violation of the discharge, and as such, cannot be overlooked.

In sum, the court finds that Defendant violated § 524(a) of the Bankruptcy Code, and that Plaintiff is entitled to partial summary judgment in his favor, with respect to the issue of violation of the discharge injunction. Defendant's motion for summary judgment is accordingly denied. The court will require further hearing with respect to the issue of damages. *See In re Hardy*, 97 F.3d 1384 (C.A.11 1996).

An order will be entered in conformity to this decision.