In re Richard M. WOOD, Karen
R. Wood, Debtors.

Richard M. Wood, Karen
R. Wood, Plaintiffs,

v.

United States of America, Defendant.

Bankruptcy No. 97–11676–8G7.
Adversary No. 98–25.

United States Bankruptcy Court,
M.D. Florida,
Tampa Division.

Sept. 9, 1999.

---

B. Gray Gibbs & Runyan, P.A., St. Petersburg, FL, for Plaintiff.

Mary Apostolakos Hervey, U.S. Dept. of Justice, Washington, DC, Donna A. Bucella, Acting United States Attorney, Tampa, FL, for Defendant.

## *ORDER ON PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT, DEFENDANT'S OPPOSITION AND CROSS MOTION FOR SUMMARY JUDGMENT, AND DEFENDANT'S MOTION TO FILE FIRST AMENDED ANSWER AND COUNTERCLAIM*

PAUL M. GLENN, Bankruptcy Judge.

**THIS ADVERSARY PROCEEDING** came on for hearing on the "Motion by the Plaintiffs for Partial Summary Judgment" with respect to the complaint filed by Richard M. and Karen R. Wood (the "Plaintiffs" or the "Debtors") and on the "Opposition and Cross Motion for Summary Judgment" filed by the United States of America (the "Defendant" or the "IRS"). The Defendant has also filed a "Motion to File First Amended Answer and Counterclaim."

## Background

It appears that the following facts are undisputed:

1. Prior to the filing of the Debtors' petition, the Debtors owed income taxes for 1985, 1990, 1991, and 1992 which, with interest and penalties, totaled approximately $86,045.40 at the time the bankruptcy petition was filed. Pursuant to 26 U.S.C. § 6321, a lien existed in the amount due in favor of the United States upon all property and rights to property, whether real or personal, belonging to the Debtors.

2. The Chapter 7 petition of the Debtors was filed on July 16, 1997.

3. No schedules were filed with the petition. Filed with the petition was a mailing matrix including the IRS.

4. The Notice of Commencement set the date for the meeting of creditors as August 14, 1997.

5. The Debtors' schedules were filed on August 6, 1997.

  a. On Schedule B—Personal Property, the Debtors included an "IRA" with a value of $50,000. No location of the IRA was disclosed on the schedule, although the Official Form for the schedule requires such information.

  b. On Schedule C—Property Claimed Exempt, the Debtors included the "IRA" with the value of $50,000.

  c. On Schedule F—Creditors Holding Unsecured Nonpriority Claims, the Debtors included the IRS with a claim for taxes for 1985, 1990, 1991, and 1992 in the amount of $84,807.

6. The meeting of creditors was convened and concluded on August 14, 1997.[1] A representative of the IRS attended the meeting of creditors.

7. No objection to the list of property claimed as exempt has been filed. The

---

1. The Proceeding Memo for 341 Meeting in the case file is dated August 13, 1997; however, whether the meeting was held on August 13 or August 14 is not important in this case.

30th day following the conclusion of the meeting of creditors was September 13, 1997.

8. It appears that by October 1, 1997, an account belonging to Karen R. Wood was located or established at JBHanauer & Co. The Debtors refer to this account as an investment account which they scheduled as an exempt asset. In a letter dated December 11, 1998, from JBHanauer & Co. to the IRS, JBHanauer advised the IRS of the following:

a. No activity took place in the account in the months of July, August, and September, 1997.

b. The amount of $55,440.10 was deposited into the account by a check dated September 29, 1997.

c. The amount of $55,440.10 was withdrawn from the account, liquidating the account. The withdrawals were made daily over six consecutive business days, by checks issued by JBHanauer which show the following:

i. $10,000 check dated Wednesday, October 1, 1997, payable to the order of Karen R. Wood, which was negotiated at and/or deposited into an account in the name of Karen R. Wood at First Union National Bank on October 1, 1997;

ii. $10,000 check dated Thursday, October 2, 1997, payable to the order of Karen R. Wood, which was deposited into an account at Suncoast Schools Federal Credit Union on October 2, 1997;

iii. $10,000 check dated Friday, October 3, 1997, payable to the order of Karen R. Wood, which was negotiated at and/or deposited into an account at Nationsbank, N.A. on October 3, 1997;

iv. $10,000 check dated Monday, October 6, 1997, payable to the order of Karen R. Wood, which was negotiated at and/or deposited into an account at Nationsbank, N.A. on October 7, 1997;

v. $10,000 check dated Tuesday, October 7, 1997, payable to the order of Karen R. Wood, which was negotiated at and/or deposited into an account at Nationsbank, N.A. on October 9, 1997;

vi. $5,440.10 check dated Wednesday, October 8, 1997, payable to the order of Karen R. Wood, which was negotiated at and/or deposited into an account at Nationsbank, N.A. on October 20, 1997.

9. The Discharge of Debtors was entered by the Court on October 20, 1997.

10. The Debtors' attorney made a request dated October 29, 1997, to the IRS for a determination of dischargeability with respect to the Debtors' income tax liabilities for 1985, 1990, 1991, and 1992.

11. The IRS responded to the request by a letter without a date indicating that the tax liabilities are dischargeable in bankruptcy. The response of the IRS further stated: "Although the liabilities due and owing are dischargeable, any notice of Federal Tax Lien properly filed by the IRS prior to the filing of the petition, causes a lien to remain attached to all exempt and abandoned property of the debtors, owned prior to the petition filing, throughout the bankruptcy proceeding and thereafter, until released or becomes unenforceable by law. (Title 11 USC/522(c)(2)(b))."

12. On December 2, 1997, Nationsbank issued two Official Checks:

a. Nationsbank Tampa Kennedy issued an Official Check in the amount of $9,000, payable to the order of IRS, and purchased by Karen R. Wood;

b. Nationsbank Tampa Westshore issued an Official Check in the amount of $8,000, payable to the order of IRS, and purchased by Karen R. Wood.

13. The two checks described above were submitted to the IRS with Payment Voucher 4 for 1997 estimated taxes due January 15, 1998. Each of the two checks contains the notation "Form 1040

ES" and the social security number for Richard M. Wood.

14. At some time subsequent to the Debtors' discharge, the IRS served a levy upon JBHanauer & Co. in an effort to levy upon the exempt account to apply against income taxes discharged in the bankruptcy. In response to the levy, JBHanauer advised the IRS that the Debtors no longer maintained an account. The IRS served an administrative summons dated December 3, 1997, on JBHanauer to determine what happened to the IRA. JBHanauer responded to the summons by letter dated December 11, 1997, with the following information about the account:

a. the statement that no activity took place in the account in the months of July, August, and September, 1997;

b. a month end ledger for the month ended October 31, 1997;

c. a photocopy of a "deposit check dated September 29, 1997 in the amount of $55,440.10;"

d. photocopies of the six checks dated October 1, 1997, through October 8, 1997, totaling $55,440.10, described in paragraph 8 above.

15. On December 15, 1997, the IRS issued three Notices of Levy, each in the amount of $86,045.40, the unpaid balance of assessment for the 1985, 1990, 1991, and 1992 taxes, interest, and penalties which had been discharged but which was the subject of the tax lien. The Notices of Levy were directed to Nationsbank, Suncoast Schools Federal Credit Union, and First Union Bank, each of the financial institutions at which the Debtor had negotiated or deposited the checks from JBHanauer.

16. The Debtors received the following letters from the financial institutions:

a. Nationsbank letter dated December 17, 1997, advising that it had received the levy and was withholding the amount of $9,604.95;

b. First Union National Bank letter dated December 17, 1997, advising that it had received the levy and was withholding the amount of $583.33.

c. Suncoast Schools Federal Credit Union letter dated December 2, 1997, advising that it had received the levy and was withholding the amount of $13.77 from their savings account and $1,884.68 from their checking account.

d. Each of the letters from the financial institutions to the Debtors advised the Debtors that the institutions had received the notices of levy, that the funds would be withheld for 20 days, and that the funds would be remitted after 20 days if the IRS did not release the levies.

17. The amounts which were withheld by the financial institutions were the available balances in the Debtors' accounts at those institutions on the dates the levies were received. The funds deposited into the accounts by the Debtors most immediately prior to the levies, and therefore the sources of the funds which were subject to the levies, were:

a. Nationsbank:

i. $8,857.55 deposit on December 9, 1997, of payments to Karen Wood by Ablest Service Corp. with respect to invoices dated November 5 and November 10;

ii. $5,000 deposit on November 25, 1997, of payment to Karen Wood by Ablest Service Corp. with respect to an invoice dated October 24.

b. First Union National Bank:

i. $47.85 deposit on December 15, 1997, of a refund from Jumbosports;

ii. $1,173.06 deposit on December 5, 1997, of net pay for Karen Wood from Education First Marketing LLC.

c. Suncoast Schools Federal Credit Union: no specific information was provided with respect to the deposits into the checking and savings accounts. However, Karen Wood stated in her affidavit in support of her mo-

tion for partial summary judgment that: "The money which the Internal Revenue Service levied in my bank accounts was not the funds from the investment account," and that "The money which the Internal Revenue Service levied was money earned by myself after my bankruptcy." These statements are uncontroverted by the declaration filed by the IRS or by any of the stipulated facts.

18. The following statement in the declaration of the IRS is uncontroverted: "After being contacted by debtors' counsel concerning the levies, I stated that I would need the following information in order to release the levies: (1) evidence that I had seized property other than the proceeds of the retirement account; and (2) a full accounting of the proceeds of the retirement account, including the location of any remaining proceeds. The accounting is necessary to ensure that the funds that debtors claim to be post-petition business income is not in actuality the proceeds of the retirement account. To date this request has not been fully complied with."

19. The withheld funds, totaling $12,086.73, were subsequently forwarded to the IRS by the financial institutions.

20. At the hearing, the Debtors advised that a portion of the proceeds of the JBHanauer & Co. account had been used as follows:

a. $2,868.78 on October 29, 1997, to pay 1995 delinquent Hillsborough County real estate taxes.

b. $9,000 by Official Check of Nationsbank Tampa Kennedy, dated December 2, 1997, to pay estimated 1997 taxes due January 15, 1998, as described in paragraphs 12 and 13 above;

c. $8,000 by Official Check of Nationsbank Tampa Westshore, dated December 2, 1997, to pay estimated 1997 taxes due January 15, 1998, as described in paragraphs 12 and 13 above;

d. $13,910.51 by Official Check of First Union Citrus Park, dated April 15, 1998, to pay $11,708.00 for the tax due and $2,202.51 of the interest due as a result of Income Tax Examination Changes for 1995.

### Plaintiffs' Motion for Partial Summary Judgment

The Plaintiffs' complaint seeks relief from this Court to order the Defendant to release the levies on the bank accounts as set forth above, to find the Defendant in contempt of Court for violation of 11 U.S.C. § 524, and to award the Plaintiffs damages, costs, and attorney's fees pursuant to 11 U.S.C. §§ 524 and 105(a). In the Motion for Partial Summary Judgment, the Plaintiffs seek to have the Court determine that Defendant is in violation of 11 U.S.C. § 524, with the question of damages reserved for a future hearing.

The Debtors filed a Chapter 7 petition on July 16, 1997. The IRS was listed on Schedule F as a creditor holding unsecured nonpriority claims for taxes for the years 1985, 1990, 1991, and 1992 in the total amount of $84,807.00. On Schedule B the Debtors listed an "IRA" with a value of $50,000 but did not disclose its location as required by the schedule. On Schedule C the Debtors claimed the IRA with a value of $50,000 as exempt.

The section 341 meeting of creditors was first set and concluded on August 14, 1997, and a Revenue Officer attended on behalf of the Internal Revenue Service. No objection to the list of exemptions was filed by September 13, 1997, so on September 14, 1997, the property claimed as exempt was exempt. 11 U.S.C. § 522(1).

By check dated September 29, 1997, the amount of $55,440.10 was deposited into an account in the name of Karen R. Woods at JBHanauer & Co. ("JBHanauer"). This check must have been deposited on October 1, 1997, because there was no activity in the account in September, 1997, and the account was "liquidated" by a series of

withdrawals totaling $55,440.10 in the first six business days in October. The checks liquidating the account were negotiated and/or deposited into at least three separate financial institutions.

The Debtors received their discharge on October 20, 1997. The tax liabilities for 1985, 1990, 1991, and 1992 were discharged.

A lien for the tax liabilities in favor of the United States had arisen prepetition upon all property and rights to property, whether real or personal, belonging to the Debtors. 26 U.S.C. § 6321. This lien remained upon all exempt property during and after the case. 11 U.S.C. § 522(c)(2)(B).

Entry of the Debtors' discharge terminated the automatic stay of § 362(a), as provided in § 362(c)(2).

Following entry of the discharge and the termination of the automatic stay, the IRS served a levy on JBHanauer to levy the account and apply it against income taxes discharged in bankruptcy. JBHanauer informed the IRS that the account no longer existed. The IRS then served an administrative summons on JBHanauer, and JBHanauer wrote the letter of December 11, 1997, providing photocopies of each of the six checks as negotiated. The photocopies showed that the checks had been negotiated or deposited at First Union National Bank, Nationsbank, and Suncoast Schools Federal Credit Union.

On December 15, 1997, the IRS served levies on First Union, Nationsbank, and Suncoast Federal Credit Union, the banks at which the checks from JBHanauer had been negotiated or deposited. Each levy was in the amount of $86,045.40, the full amount of taxes owed for the tax years in question.

By the time the levies were served on the banks, the only funds in the accounts were funds which the Debtors had earned post petition.

The banks advised the Debtors that funds had been levied, the amount of the funds subject to the levies, and that the funds would be sent to the IRS if the levies were not resolved within 20 days. The attorney for the Debtors contacted the IRS and requested the release of the levies. To resolve the levies, the IRS requested evidence that the levied funds were not the proceeds of the retirement account, and an accounting of the disposition of the proceeds of the retirement account. The requested information was not supplied, and the levies were not resolved. The Internal Revenue Service received $12,086.73 in funds from the levies on the accounts at the three financial institutions.

The Debtors used at least $30,910.51 of the $55,440.10 which had passed through the account at JBHanauer to pay taxes which were not discharged in the bankruptcy. The Debtors indicate that from the proceeds of the JBHanauer account, the Debtors made an estimated tax payment of $17,000 with payment voucher 4, due January 15, 1998, for taxes due with respect to the 1997 calendar year. This payment was made by two checks: one check in the amount of $9,000, dated December 2, 1997, which was an Official Check of Nationsbank Tampa Kennedy; and another check in the amount of $8,000, dated December 2, 1997, which was an Official Check of Nationsbank Tampa Westshore. The Debtors also indicate that the amount of $13,910.51 was paid by Official Check of First Union Citrus Park, dated April 15, 1998, to pay $11,708.00 for the tax due and $2,202.51 of the interest due as a result of Income Tax Examination Changes for 1995.

Section 524(a)(2) provides that the discharge in a bankruptcy case operates as an injunction against any act to collect any discharged debt as a personal liability of the debtor. Although property exempted from the estate remains liable during and after the case for a debt secured by a tax lien, none of the funds levied by the IRS were property which had been exempted from the estate. The

federal tax lien does not attach to property acquired by a debtor after a petition in bankruptcy has been filed and the underlying tax liability has been discharged against the debtor personally. *United States v. Sanabria*, 424 F.2d 1121 (7th Cir.1970). See also, *In re Dishong*, 188 B.R. 51 (Bankr.M.D.Fla.1995). Accordingly, the levy of the accounts was an act in violation of the permanent injunction.

■ The Plaintiffs assert that the Defendant willfully violated the permanent injunction pursuant to 11 U.S.C. § 524(a)(2) with its actions of levying against the bank accounts of the Plaintiffs. *United States v. Hardy*, 97 F.3d 1384 (11th Cir.1996) is the controlling case for this issue. The test for determining willfulness for violations of the discharge injunction is (1) whether the Defendant was aware of the discharge injunction, and (2) whether the Defendant intended the actions which violated the permanent injunction. *Id.* at 1390. There is no question from the facts presented that this test has been met, and that the violation of the permanent injunction was willful.

■ As set forth in *Hardy*, supra, the Court may award the Plaintiffs any "necessary or appropriate" monetary relief under the statutory contempt powers of 11 U.S.C. § 105(a) for violation of the discharge injunction. *Id.* at 1390. The Court agrees that the IRS should return the levied funds to the Debtors. However, based on the record, the Court concludes that no further sanctions against the IRS are appropriate.

During the automatic stay period, Ms. Wood deposited $54,550.10 into the account at JBHanauer and immediately withdrew those same funds in a series of six withdrawals over the next six consecutive business days. She negotiated or deposited the six checks from JBHanauer in at least three separate institutions. When the IRS finally followed the funds to these institutions and served the levies, each institution advised the Debtors that it would

not remit the funds to the IRS for 20 days, to give the Debtors the opportunity to resolve the liens. To resolve the levies, the IRS requested information regarding the source of funds in the bank accounts and the disposition of the funds from the IRA account. The Debtors did not supply the information requested. Rather, the Debtors used a substantial portion of the funds which had been subject to the lien for discharged taxes to pay taxes which were not discharged.

The court in *In re Dinatale*, 235 B.R. 569 (Bankr.D.Md.1999), examined the post-discharge actions of the IRS in connection with its attempt to pursue the proceeds of a liquidated exempt retirement account of the debtor. The court found that the IRS violated the discharge injunction with its actions in garnishing wages of the debtor. The court also found that the prerequisite steps that the IRS took to levy on exempt retirement funds post-discharge did not violate the discharge injunction. The court stated, "In effect, Defendant was entitled to chase the proceeds of Plaintiff's pension distribution." *Id.* at 575.

In the circumstances of this case, while the Court concludes that the IRS should refund to the Debtors the amounts in the accounts which were levied, the Court also concludes that no other sanctions against the IRS are appropriate.

### Defendant's Opposition and Cross Motion for Summary Judgment

■ In its opposition to the Debtors' motion for summary judgment and in its cross motion for summary judgment, the IRS asserts that no violation of the permanent injunction occurred, and that the Court should utilize equitable principles of tracing and constructive trust to find that the lien of the IRS attached to the proceeds of the retirement account and also to any funds (of whatever origin) in the bank accounts that the Plaintiffs used to negotiate and/or deposit their IRA checks, up to the amount of the exempt asset.

Clearly, if the Plaintiffs had not liquidated the exempt IRA, the IRS could have levied on the account to satisfy the discharged tax liabilities after the Plaintiffs received their discharge. See *In re Deppisch*, 227 B.R. 806 (Bankr.S.D.Ohio 1998). Also, if the IRS had served the notice of levy on the IRA prior to the filing of the Chapter 7 petition by the Debtors, the IRS would be entitled to the proceeds of the IRA to offset the discharged tax liabilities. See *In re Quillard*, 150 B.R. 291 (Bankr. D.R.I.1993) and *McLaughlin v. Internal Revenue Service*, 139 B.R. 9 (N.D.Ohio 1991).

In this case, the IRS argues that the Plaintiffs' attempt to defeat the federal tax lien should be thwarted by employment by the Court of the equitable principles of tracing and constructive trust. However, in *Bender v. Centrust Mortgage Corporation*, 51 F.3d 1027, 1030 (11th Cir. 1995), the appellate court set forth Florida law with regard to constructive trusts, stating: "A constructive trust cannot be imposed on general assets." The court quoted *Finkelstein v. Southeast Bank, N.A.*, 490 So.2d 976, 983 (Fla.Dist.Ct.App. 1986), stating "It is well settled that Florida courts will impress property with a constructive trust only if the trust res is specific, identifiable property or if it can be clearly traced in assets of the defendant which are claimed by the party seeking such relief."

In this case, it appears that the proceeds of the IRA were quickly disbursed from the checking accounts following deposit or that certain checks were negotiated at the three banking institutions without the funds actually being deposited. The tracing of the specific IRA proceeds is unclear from the record. The record is not sufficient to satisfy the requirements of establishing a constructive trust.

Further, it appears that under Florida law "[a] trust is 'constructed' by equity to prevent an unjust enrichment of one person at the expense of another as the result of fraud, undue influence, abuse of confidence or mistake in the transaction that originates the problem." *Wadlington v. Edwards*, 92 So.2d 629, 631 (Fla.1957). From the record, the Court cannot conclude that the actions of Ms. Wood constitute fraudulent conduct so as to justify the imposition of a constructive trust on the post-petition bank account funds for the benefit of the Defendant.

On the basis of the record before the Court, a constructive trust cannot be established, and the Defendant's Motion for Summary Judgment should be denied.

**Defendant's Motion to File Amended Answer and Counterclaim**

The Defendant has filed a Motion to File First Amended Answer and Counterclaim for tortious conversion of property subject to a federal tax lien. Rule 7013, Federal Rules of Bankruptcy Procedure, governs the filing of counterclaims and cross claims in adversary proceedings. Fed. R. Bankr.P. 7013 incorporates Fed. R.Civ.P. 13, but modifies Rule 13 to accommodate bankruptcy practice:

Rule 13 F.R.Civ.P. applies in adversary proceedings, except that a party sued by a trustee or debtor in possession need not state as a counterclaim any claim that the party has against the debtor, the debtor's property, or the estate, unless the claim arose after the entry of an order for relief. A trustee or debtor in possession who fails to plead a counterclaim through oversight, inadvertence, or excusable neglect, or when justice so requires, may by leave of court amend the pleading, or commence a new adversary proceeding or separate action.

Where a defendant seeks to assert an omitted counterclaim under Rule 13(f), "the same liberal standards under Rule 15(a) are also applicable." *MCI Telecommunications Corporation v. Best Telephone Company, Inc.*, 898 F.Supp. 868, 875 (S.D.Fla.1994), citing *Kreuzfeld, A.G. v. Carnehammar*, 138 F.R.D. 594, 609 (S.D.Fla.1991) and *Foman v. Davis*, 371 U.S. 178, 182, 83 S.Ct. 227, 9 L.Ed.2d 222

(1962) that "[u]nder Rule 15(a) leave to amend a pleading should be 'freely given.'"

■ The Eleventh Circuit Court of Appeals has stated that the grounds for denial of a motion to amend include "undue delay, undue prejudice to the defendants, and futility of amendment." *Abramson v. Gonzalez,* 949 F.2d 1567, 1581 (11th Cir. 1992).

■ The IRS filed its Motion to File First Amended Answer and Counterclaim five months after the filing of the Answer, after filing a Joint Pre–Trial Statement containing its theory of the case, its summary of facts and evidence, its statement of contested facts, and its statement of contested legal issues, after the pre-trial hearing, after motions for summary judgment had been filed by both parties, and approximately two weeks prior to the date set for the hearing on the motions for summary judgment and the date set for the trial. In the circumstances of this case, the Court concludes that there was undue delay in filing the motion to amend by the Defendant, and that the motion to amend should be denied.

### Conclusion

For the reasons expressed above, the Court concludes that the Plaintiff's Motion for Partial Summary Judgment should be granted as provided in this order, that the Defendant's Cross Motion for Summary Judgment should be denied, that the Defendant should return to the Plaintiffs the funds which were obtained by the levies, that no further sanctions against the Defendant are appropriate, and that the Defendant's Motion to File First Amended Answer and Counterclaim should be denied.

Accordingly;

**IT IS ORDERED** that:

1. The Plaintiff's Motion for Partial Summary Judgment is granted as provided in this order. The Defendant is ordered to return to the Plaintiffs the sum of $12,086.73. The Court finds that no further sanctions against the Defendant are appropriate.

2. The Defendant's Cross Motion for Summary Judgment is denied.

3. The Defendant's Motion to File First Amended Answer and Counterclaim is denied.

4. The Court will issue a Final Judgment consistent with this order.